STATE, PLAINTIFF-APPELLEE, *v.* THOBE, DEFENDANT-APPELLANT.

Ohio Appeals, Second District, Darke County.

No. 780. Decided October 14, 1961.

*Mr. Philip D. Brumbaugh,* prosecuting attorney, for plaintiff-appellee.

*Messrs. Spidel, Staley & Hole,* by *Mr. Hugh A. Staley,* of counsel, for defendant-appellant.

KERNS, J.   Paul Thobe, the defendant-appellant herein, was charged in the County Court of Darke County, Northeastern District, with reckless operation of a vehicle in violation of Section 4511.20, Revised Code.   The affidavit charging the offense was signed by the arresting officer, Robert D. Fair, Chief of Police of the Village of Gettysburg, Ohio.

After overruling a defense objection that the arresting officer was incompetent to testify by reason of the provisions of Section 4549.16, Revised Code, the trial court heard the testimony of said officer and found the defendant-appellant guilty as charged.   On appeal to the Court of Common Pleas of Darke County, the judgment of the County Court was affirmed.

The statutes upon which the defendant-appellant relies are as follows:

Section 4549.15, Revised Code.   "Every member of the state highway patrol and every other peace officer, while such officer is on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall wear a distinctive uniform. The superintendent of the patrol shall specify what constitutes such a distinctive uniform, except that the sheriff of a county and the police department of a municipal corporation shall determine the uniform for their respective departments."

Section 4549.16, Revised Code.   "Any officer arresting or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the

time of the arrest was not wearing a distinctive uniform in accordance with Section 4549.15, Revised Code."

The appeal to this court is dependent upon two questions: (1) Was the arresting officer at the time of the arrest wearing a distinctive uniform as required by Section 4549.15, Revised Code, and (2) Was the arresting officer on duty at the time of the arrest exclusively, or for the main purpose of enforcing traffic laws?

With reference to the first question, the evidence discloses that the arresting officer was wearing green trousers, a green shirt, a police cap, a badge and an exposed belt, holster and pistol. This atire undoubtedly gave the officer a distinctive appearance. And the subsequent testimony which, among other things, describes a chase at speeds in excess of one hundred miles per hour, leads irresistibly to the conclusion that the official identity of the arresting officer in this case did not completely evade the perceptive power of the defendant-appellant.

But was the officer wearing a distinctive uniform as contemplated by Section 4549.15, Revised Code.

"Uniform," when used as a noun, is defined in Webster's Universal Dictionary as follows:

"A dress of the same kind, fabric, fashion or general appearance as that worn by other members of the same body, whether military, naval, or other, by which the members may be recognized as belonging to that particular body; opposed to plain clothes, or ordinary civil dress."

With reference to the apparel worn at the time of the arrest, the arresting officer testified as follows:

"Q. And, how long had you been on duty that day?

"A. One-half hour prior to that time.

"Q. That's right. And, at that time you were—those were work clothes you were wearing that day?

"A. They were. Well, they could be used in either case.

"Q. Let me ask you, officer, has the municipal corporation determined the type of uniform that should be worn by police officers?

"A. No.

"Q. Has the police department made any determination of the type of uniform that should be worn by police officers?

"A. No, sir.

"Q. Let me ask you, the type of uniform you were wearing on this particular afternoon wasn't the type of uniform you are wearing this afternoon, was it?

"A. Not completely, sir. No, sir.

"Q. In other words, you have now on the regular police uniform, have you not?

"A. Yes, sir.

"Q. That includes a police jacket, police trousers, a gold badge, a leather belt and holster and police shirt, and tie doesn't it?

"A. Yes.

"Q. And this uniform you are wearing this afternoon conforms to the uniform which is provided by the Director of the Highway Patrol, doesn't it?

"A. Yes, sir.

"Q. Right?

"A. Yes.

"Q. You weren't wearing that kind of uniform on that afternoon, were you?

"A. No.

"Q. The only thing you had that could be considered a police uniform as recognized by the Highway Patrol was your cap and badge, wasn't it?

"A. Yes, sir.

"Q. That's all."

From the foregoing testimony, it appears that the Gettysburg Police Department, by custom, at least, had adopted a regular police uniform substantially different from that worn by the arresting officer on the date of the alleged offense. And surely the failure of the department to officially designate a uniform does not give it unlimited discretion as to what it may wear on different days without thwarting the obvious purpose of Section 4549.15, Revised Code. We conclude, therefore, that the arresting officer was not wearing the required "uniform" regardless of how distinctive his general appearance may otherwise have been.

With reference to the second question, the trial court observed as follows:

"Section 737.19, Revised Code, sets forth the duties of the

Chief of Police of a Village as follows: that he shall suppress all riots, disturbances, and breaches of the peace; that he shall arrest all disorderly persons of the village and pursue and arrest any person fleeing from justice in any part of the State; that he shall arrest any person in the act of committing any offense against the laws of the State or the ordinances of the village; that he shall receive and execute any proper authority for the arrest and detention of criminals fleeing or escaping from other places or States and that he shall be subject to the same responsibilities as constables. In other words, the Chief of Police is charged with the whole spectrum of law enforcement in the village which would include the arrest of persons in violation of motor vehicle or traffic laws of this state. It is the opinion of this Court that since R. D. Fair was on duty as Chief of Police of the Village of Gettysburg, that since he was the only officer on duty in the village at the time of the arrest of Paul Thobe, that since he did inform the Court that he was on duty as the Chief of Police and for the purpose of carrying out the duties of that office, and because as such Chief of Police he was charged under the law with the whole spectrum of law enforcement of the village, that R. D. Fair at the time of the arrest of the Defendant, Paul Thobe, was not on duty exclusively or for the main purpose of enforcing the motor vehicle or traffic laws of this State.

"The Court, therefore, finds that Sections 4549.15 and Section 4549.16, Revised Code, were not applicable to R. D. Fair at the time he arrested the Defendant, Paul Thobe, and therefore, the Court finds that said R. D. Fair is not incompetent to testify in this cause by reason of said sections."

The observations and findings thus expressed were approved on appeal to the Court of Common Pleas of Darke County, and based on the record presented, we are in agreement with both courts on this phase of the case.

The judgment will be affirmed.

CRAWFORD, P. J., and SHERER, J., concur.