City of Columbus, Appellee, *v.* Stump, Appellant.

(No. 74AP-198—Decided September 24, 1974.)

*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Daniel W. Johnson,* city prosecutor, and *Mr. Michael J. Norris,* for appellee.
*Mr. John E. Palcich,* for appellant.

Troop, P. J. This appeal is from the conviction and judgment of the Franklin County Municipal Court entered April 5, 1974, at the conclusion of a trial to the court upon a charge of the reckless operation of a motor vehicle. The defendant George G. Stump, the appellant herein, filed a notice of appeal from the judgment May 2, 1974, and offers three assignments of error in support of the appeal.

The first two assignments have a common demoninator in that they relate to statutes which establish specific standards for officers and vehicles used in the control of traffic. The first one of the series of four, R. C. 4549.13, requires that any motor vehicle used by the highway patrol, or any other peace officer, while "on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state," shall be "marked in some distinctive manner or color."

Next in order and related to R. C. 4549.13 is R. C. 4549.14 as follows:

"Any officer arresting * * * a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with Section 4549.13 of the Revised Code."

The same basic principle and purpose is reflected in R. C. 4549.15, which requires any police officer "on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws of this state" to wear a "distinctive uniform."

The related section, R. C. 4549.16, provides that the police officer, "being on duty exclusively or for the main purpose of enforcing such laws," is incompetent to testify as a witness in the prosecution of the arrested person, if at the time of arrest he "was not wearing a distinctive uniform" as required by R. C. 4549.15.

Some basic facts are necessary to a conclusion as to these two assignments of error. Two Worthington police officers, in an unmarked cruiser, were watching the Friar Tuck Bar at 2 a. m., on November 17, 1973, from a point across the street from the bar. According to police officer Jack Lower, the purpose was to check "illicit activities outside the bar." The officer said that he and his fellow officer saw the automobile driven by the defendant on a private lot, heard the engine revved up, the tires squeal—first on the lot and then on the street—and noticed some fishtailing of the car, all sufficient to induce the police officers to reason that such erratic driving, coupled with excessively high speed, was dangerous.

The Worthington men pursued the Stump car and such pursuit ended in an accident within the limits of the city of Columbus. A Columbus police officer made the arrest for reckless operaton. The trial court

permitted officer Lower to testify. There is no dispute as to the cruiser being unmarked and that officer Lower was not in uniform. Counsel for the defendant timely objected to the testimony of the officer on the basis of the provisions in R. C. 4549.14 and 4549.16.

Both sections require distinctive identification of men and vehicles, and both sections make the testimony of an officer incompetent when he acts in traffic offense situations without identifying marks. The statutes spell out the applicability to those officers, and their vehicles when on duty "exclusively or for the main purpose" of traffic law enforcement.

Such quoted statement, repeated four times in the legislative enactments noted, recognizes the existence of exceptions to those rules. Little difficulty arises in applying the rule when the officer and vehicles are used "exclusively" in traffic duty. The almost continuing and universal duty of the highway patrol is the enforcement of traffic regulations and control. Other duties are an exception. Police departments in the larger cities have a traffic division charged exclusively with traffic control and regulation enforcement. In this area, while on duty, the officers must wear a distinctive uniform and have their automobile marked.

There is little or no decision law which offers any assistance in the application of these sections to the realities of the traffic control task. A fairly recent decision of the Ohio Supreme Court, *City of Dayton* v. *Adams* (1967), 9 Ohio St. 2d 89, is, however, of interest. A radar speed-check setup was involved and the so-called "chase" vehicle was marked. The car carrying the radar equipment, which was parked along the curb, was unmarked. At trial, both police officers were permitted to testify. The Supreme Court held that the testimony of the officer in the radar car was incompetent.

At page 90 of the court's opinion, the court speaks generally, however, concerning the "intent" of the legislature in passing these laws. One purpose of the law, said the court, is to provide uniformity in traffic control. The

court then adds a second legislative intention:

"* * * to put a curb upon the speed traps which were often operated by 'peace officers' of the municipalities and townships."

The Second District Court of Appeals provides an interesting opinion, also, in *State* v. *Thobe* (1961), 91 Ohio Law Abs. 92. The police officer involved in the case was wearing green trousers and shirt, a police cap, badge and exposed belt, holster and pistol. The officer chased the defendant at speeds of up to 100 miles per hour. This police officer was the chief of police of a village. As such, his duties were prescribed by R. C. 737.19. He was the only officer on duty at the time of the incident. The court held that the officer was not clothed in a distinctive uniform but, since he was charged with the whole spectrum of duties required of a chief of police, he could not be held to be "exclusively" in the business of traffic control.

The case clearly describes the intention of the legislature to eliminate abuses in the enforcement of traffic laws. The state and large police units in cities and local areas can and do respect the directives noted. The problem of the less populous subdivisions, which employ only a limited number of police officers, or get along with just one, as was true in the latter case, is a decidedly different problem.

The Worthington police officer makes it clear that he had, at least, more than one duty on the evening of November 17, 1973, and by reason of being in the business of checking Friar Tuck's Bar at 2 a. m., when traffic is ordinarily very light, could not be said to have been "exclusively" assigned to traffic control. The elusive definition of the concept of "main purpose" is the troublesome portion of the legislative exclusion.

"Main purpose" must involve the complete assignment of duty for the Worthington police officer for the "trick" he worked as a whole. If that assignment included narcotics control efforts and the patroling of the city for protection against the many forms of law breaking, then it cannot be said that traffic control was the "main pur-

pose" of his assignment that night. To attempt to segment his general duties from his assignment for a particular night is to create a limitation which ignores the practicalities of a police assignment. Such segmentation suggests a requirement to change clothes, in this instance, when the officer left the surveillance of the bar and before he pursued a flagrant traffic violator. The entire duty of the officer, be it multiple or single, must be respected and to do otherwise flies in the face of the intent of the legislature as pointed out by the Supreme Court in *Adams, supra.*

A reasonable interpretation in the face of cold practicalities, with respect for the broader purpose, or intent of the legislature, requires that "main purpose" apply to the whole period of duty of the officer concerned, and not to the duty at the moment he makes an arrest. The first two assignments of error are overruled.

The third assignment of error advanced by counsel for the defendant states that the original arrest was not lawful because it was made by Worthington police in the city of Columbus, and that they were not in "hot pursuit." It is unnecessary to determine whether the arrest was legal because an illegal arrest does not invalidate an affidavit filed in a misdemeanor case or preclude prosecution thereon. *State* v *Hooper* (1966), 10 Ohio App. 2d 229.

For the reasons advanced the assignments of error offered by the defendant are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

REILLY, J., concurs.
WHITESIDE, J., dissents.

WHITESIDE, J., dissenting. Being unable to concur in the reasoning of my colleagues with respect to the first two assignments of error, I must respectfully dissent. A Worthington police officer in civilian clothes, operating an unmarked police cruiser and accompanied by another officer in uniform (defendant testified that the other officer also was in civilian clothes), observed defendant operating his automobile from a private lot and revving his engine and squealing his tires. The police officers followed defend-

ant's automobile and observed that defendant again squealed his tires, fishtailed his vehicle, proceeded at a high rate of speed, ran a stop sign, and eventually drove the automobile off of the roadway, through a yard and into a tree. In the process of the officers' following defendant, they proceeded from Worthington into the city of Columbus. The Worthington officers arrested defendant and then summoned a Columbus police officer. The Worthington officer, wearing civilian clothes and operating an unmarked police cruiser, was permitted to testify over the objection of the defendant. The other Worthington police officer, allegedly in uniform, did not testify. The basic issue raised by the first two assignments of error is whether the testimony by the Worthington police officer is precluded by R. C. 4549.14 and 4549.16.

R. C. 4549.14 reads as follows:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code."

R. C. 4549.16 reads:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was not wearing a distinctive uniform in accordance with section 4549.15 of the Revised Code."

Admittedly, the Worthington police officer who testified was using a vehicle not marked as required by R. C. 4549.13 and was not wearing a distinctive uniform in accordance with R. C. 4549.15. The city contends, however, that the police officer was not "on duty exclusively or for

the main purpose of enforcing'' motor vehicle or traffic laws. That these sections apply to prosecutions for violations of municipal motor vehicle or traffic ordinances is settled by *City of Dayton* v. *Adams* (1967), 9 Ohio St. 2d 89.

The city contends that ''the Worthington police officer involved was not on duty for the exclusive or main purpose of enforcing motor vehicle laws, but rather was investigating drug traffic and other illicit activities.'' When asked what his ''duties'' were, the Worthington officer testified:

''At that time I was basically watching Friar Tuck's Bar for illicit activities outside the bar, basically drug traffic.''

When asked on cross-examination if that was his duty, and why he left his duty post, the Worthington officer responded:

''Because this is a routine thing I do, watching this place. I can come and go on it. I wasn't watching it for any specific person or incident. There is enough that goes on there that I can come back at any given time and usually observe some type of illicit traffic. We felt that this vehicle leaving this lot left in such a manner as possibly endangering life and property.''

The testimony of the Worthington officer makes it clear that in following defendant's automobile the officer's main, if not exclusive, purpose was enforcing motor vehicle or traffic laws. With respect to his observation in the area of the bar, he expressly testified that he could ''come and go on it.'' He ceased his duty of ''observation'' and commenced engaging in the duty of enforcing motor vehicle or traffic laws when he began following defendant's automobile.

Thus, the issue before us is whether the language ''being on duty exclusively or for the main purpose of enforcing such laws'' relates to the duties performed by the officer during his entire period of duty or the duties in which he was engaged at the time he made an arrest, or participated or assisted in making an arrest, of a person charged with violating a motor vehicle or traffic law. I conclude the latter.

In general, police officers are on duty for enforcing all laws at all times. It would indeed be an onerous burden to require proof of all the activities a police officer had engaged in during a period of duty in order to ascertain whether or not he was on duty for the main purpose of enforcing motor vehicle or traffic laws.

The first paragraph of the syllabus of *Adams* states:

"Municipal police cars used in the enforcement of muncipal ordinances regulating the speed of motor vehicles upon the streets of the municipality are required to be marked as provided in Section 4549.13, Revised Code."

At the time in question, the unmarked police vehicle operated by the police officer was being used in the enforcement of motor vehicle or traffic laws. Defendant testified that he observed the vehicle following him, did not know it was a police vehicle, and was concerned about a car following him early in the morning (about 2 a. m.). In *Lackey* v. *Hurley* (1964), 175 Ohio St. 483, in discussing the validity of a service of summons by a deputy sheriff operating an unmarked vehicle who stopped a person for the purpose of serving the summons, the court stated at page 486:

"Defendant had no reason to fear that Stegeman was an officer engaged in the enforcement of the traffic laws, because such officer was not attired in any uniform, nor was his automobile marked in any distinctive manner. Sections 4549.13, 4549.14, 4549.15 and 4549.16, Revised Code.* * *"

This points out one of the main purposes of the statutes—namely, to enable a motorist to know whether a person chasing or stopping him is, in fact, a police officer, or is someone else with other purposes in mind, especially late at night, as in this case.

Whether a police officer is on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws within the purview of R. C. 4549.14 and 4549.16 is to be determined by the duty in which the officer is engaged at the time and place he makes, or particpates, or assists in making an arrest for a violation of such laws. It is not to be determined by the particular assignment the officer is engaged in immediately prior or subsequent thereto, nor by

duties he may have primarily engaged in during his tour of duty.

Thus, an officer who, while attempting to apprehend a person he has probable cause to believe has committed a felony, observes a violation of traffic laws by such person will not be precluded from testifying, even if he wore plain clothes and used an unmarked vehicle, because his primary purpose in the following and apprehension was not the enforcement of motor vehicle or traffic laws. Here, however, the only duty the officer was engaged in, in following the defendant and apprehending him, was the enforcement of motor vehicle or traffic laws. Thus, his testimony is precluded by R. C. 4549.14 and 4549.16. The trial court erred in permitting the officer to testify.

Although the officer testified that he was accompanied by a uniformed officer, who did not testify, the testifying officer stated, with respect to the uniformed officer:

"Normally, he's not noticed when he's sitting in his car with his hat off. Until he gets out of the car, he's not identified."

Whether or not an officer in civilian clothes and in an unmarked vehicle should be precluded from testifying under the circumstances is a matter of legislative discretion. The legislature has seen fit to expressly prohibit an officer under such circumstances from testifying in any prosecution against a person arrested for violating a motor vehicle or traffic law.

In my view, the conclusions of the majority that, in applying the statutes, the duties of an officer are to be determined by his complete assignment for his tour of duty render the statutes nugatory for practical purposes. A compliance with the statutes could be completely avoided by juggling duty assignments so that each officer would spend less than half of his time engaged in enforcing motor vehicle or traffic laws. Such a result is neither required, nor authorized by the statutes. Accordingly, I would find the first and second assignments of error to be well taken.

I concur with the majority opinion with respect to the third assignment of error. However, I would reverse the judgment and remand the cause for further proceedings for the reasons stated above.