**CITY OF PARMA HEIGHTS**

v.

**NUGENT.**

Parma Municipal Court.

No. 97–TRC–14474(3).

Decided May 11, 1998.

*Andrew J. Lukcso,* for plaintiff.

*Thomas A. Kelly,* for defendant.

---

KENNETH R. SPANAGEL, Judge.

This matter came before the court for hearing on the defendant's motions to suppress and dismiss on December 15, 1997, at which time the matter was heard and submitted. The court, upon a review of the same, makes the following findings of fact for purposes of this motion, conclusions of law, and ruling thereon.

This case arises upon defendant Kevin J. Nugent's arrest for operating a motor vehicle under the influence of alcohol, with an apparent refusal of a test with ALS suspension, driving under suspension, and failure to display rear illumination. The defendant seeks suppression of evidence based upon three legal issues:

1. That the officer failed to have reasonable suspicion upon which to effectuate an investigatory traffic stop of the defendant's motor vehicle;

2. That the minimally marked police vehicle used by the policeman failed to comply with the requirements of R.C. 4549.13; and

3. That the officer was incompetent to testify under Evidence Rule 601(C).

This court has reviewed this matter with some degree of significance, as it has given this court an opportunity to revisit the court's decision in *State v. Kaplan* (1994), 74 Ohio Misc.2d 55, 658 N.E.2d 825, where this court in 1994 rendered a decision regarding the requirements for a minimally marked police vehicle used in traffic enforcement. The issue as to the minimally marked police vehicle also raises the secondary issues of the officer's competency and the permissible uses of a minimally marked police vehicle.

The court, at the motion hearing, heard the testimony of Sergeant Ricky Brown of the Parma Heights Police Department. Officer Brown is head of the Traffic Unit of the Parma Heights Police Department and has been an officer for nine and a half years. The officer testified that on September 17, 1997, he was employed on the night shift, which includes supervisory work as well as what the

officer described as "normal patrol." This normal patrol includes not only operating a cruiser on the streets of Parma Heights for traffic enforcement, but also additional duties of basic patrol, to the extent that responses may be necessary. At that time, Officer Brown and two other officers were on shift on basic patrol.

The officer testified that at approximately 2:40 a.m., while in his vehicle on patrol on Stumph Road southbound near Big Creek Road, he observed a vehicle with one occupant exiting out of the commercial driveway near Dunham's Sporting Goods. The vehicle had its car lights on. The vehicle initially did not exit the driveway, but then turned left onto Stumph Road behind the officer, without signaling for the turn. As the officer drove past the vehicle, he saw the driver's face and recognized the face of the driver, knowing him as a Mr. Nugent. Although he did not know the driver's license status at that time, he knew from his personal knowledge that Nugent had his driver's license under suspension one to one and a half months prior. This was due to the defendant's prior arrest of the defendant. The officer also recognized the defendant as he looked through his rearview mirror. The officer turned south on Pearl Road and did a flip, returning to Stumph Road, which becomes York Road, so that he was then driving behind the defendant. He followed the defendant up to the traffic light at Ridgewood Drive and York Road.

At the intersection of Ridgewood Drive and York Road, he observed that the defendant's vehicle did not have light illumination over the rear license plate. At this time, the officer continued to follow the defendant's vehicle to North Church Drive, where the defendant made a left turn onto North Church Drive. The officer further testified, when asked as to other operation deviations, that the defendant's vehicle drove on the dividing line between his lane and the center turning lane twice with his left two tires going into the center left turn lane. The officer noted that the vehicle was in poor condition, including a cracked windshield, although he did not cite the vehicle for a cracked windshield. The officer effectuated a traffic stop after the vehicle was eastbound on North Church Drive. The defendant's vehicle did not initially pull over with the activation of the officer's police light, but did pull over after a siren was activated. While operating on North Church, the defendant drove past three different intersections at a slow speed with the officer behind him, with the defendant's vehicle traveling approximately one hundred to one hundred fifty yards after the siren was activated by the officer.

During the process of the traffic stop, the officer observed a strong odor of alcohol from the defendant, slow and difficult speech, and performance by the defendant of field sobriety tests, which included horizontal gaze nystagmus, which detected five out of six clues, and a walk-and-turn test, during which the

defendant could not maintain balance and had bad motor skills, which led the officer to the conclusion that the defendant was under the influence of alcohol, for which he was ultimately arrested.

The police vehicle which the officer was driving was the vehicle which Parma Heights designates as its "minimally marked police car." This vehicle is a blue-green Ford Crown Victoria, which has a removable blue oscillating light on the roof of the vehicle and the word "POLICE" written in light block letters on both front quarter panels. The vehicle additionally has red and blue lights on the rear seat deck that oscillate when activated, as well as equipment that enables the front parking lights and headlights to alternately oscillate when activated. This vehicle has a license plate with "1–800 GRAB A DUI" on it. The vehicle has been in service for approximately five years, and the vehicle is in essentially the same condition as when it first entered service. As additional evidence, the city submitted a videotape of the police vehicle in both daylight and nighttime observation with its various lights activated.

The court, in addressing the issues in the motions to suppress and dismiss, must deal with each issue separately, although the issues of the usability of the minimally marked police vehicle and the officer's competency to testify are in conjunction with each other.

## I. THE ISSUE OF THE MARKINGS OF THE POLICE VEHICLE

Defendant has raised under this court's case of *State v. Kaplan, op. cit.,* that the vehicle used by the Parma Heights police officer in this case fails to meet the requirements of R.C. 4549.13. The court rejects this argument. The court first notes that *Kaplan,* 74 Ohio Misc.2d at 58, 658 N.E.2d at 826–827, included this court's then survey of three other police vehicles. Included in that description was the vehicle that the court at that time described as the vehicle of "Department B." The vehicle referred to in *Kaplan* as "Department B" is the Parma Heights vehicle that is the subject matter of this case. This vehicle more than sufficiently meets the requirements of R.C. 4549.13. In addition to the statutory requirements of the flashing oscillating light on the top of the vehicle, it is marked in a distinctive manner through the use of the word "police," the oscillating lights on the rear seat deck, and the oscillating headlight and parking lights on the front of the vehicle. As noted in *Kaplan,* the main purpose of R.C. 4549.13 is to provide sufficient identification of the vehicle to a person stopped by an officer to establish that it is a police officer and not some person impersonating a police officer. All of the various light items were activated by this officer during the traffic stop. The court is satisfied that the vehicle meets the requirements of R.C. 4549.13, and this argument is not well taken.

## II. THE ISSUE OF THE REASONABLENESS OF THE TRAFFIC STOP

■ Defendant argues that the facts of the case at bar are insufficient to have justified the officer's making the initial investigatory traffic stop. The issue of whether there was probable cause to arrest the defendant for an OMVI or other traffic offense is not at issue. The court in determining whether there is a reasonable traffic stop must determine whether there was reasonable and articulable suspicion of a traffic violation for the officer to effectuate a traffic stop. A minor deviation in traffic operation is not sufficient to make a traffic stop. The officer must have some reasonable basis upon which to make a stop. The court, in reviewing the evidence on this issue, finds that the officer did have sufficient information upon which to base an investigatory traffic stop.

■ Although many traffic stops at night may lead to arrests for OMVI or other violations, a motor vehicle operation need not be deviant in some manner to necessitate a traffic stop. The officer testified that the defendant failed to use a turn signal when exiting a commercial driveway onto the road. This in and of itself might not be sufficient to justify a traffic stop for failure to signal. However, the officer additionally observed no rear illumination on the license plate and a cracked windshield, which would give the officer some articulable suspicion to stop the vehicle for potential equipment defects. Although not raised by the city as an additional element, this officer made specific identification of the defendant as the driver with whom the officer had previous experience on a recent basis as not being licensed to drive. Any one of these facts, when taken separately, might be insufficient to justify a traffic stop. However, when the totality of all information available to the police officer is considered, this officer did have a reasonable and articulable suspicion of potential traffic violations (minor operation deviations, equipment violations, and potential license violations) to justify an investigatory traffic stop. This investigatory traffic stop then resulted in additional information upon which the officer elicited probable cause to arrest the defendant for the violations for which he was arrested.

## III. THE COMPETENCY OF THE POLICE OFFICER TO TESTIFY UNDER EVIDENCE RULE 601.

The third element raised by the defendant, which is raised in his motion to dismiss, is that the officer was not competent to testify under Evid.R. 601. Although the primary thrust of the defendant's argument is based upon the allegation of insufficient vehicle markings, which the court has already addressed, the court in its analysis notes an additional legal issue on this argument. That issue is the usage of a minimally marked vehicle where the police officer may be engaged in activities in addition to traffic operation.

Evid.R. 601(C) and R.C. 4549.13 and 4549.14 were adopted to protect drivers from the potential of unmarked vehicles and un-uniformed officers from enforcing traffic laws. The court raises the question in this way: May an officer, who is operating a minimally marked vehicle, but who engages in duties in addition to traffic enforcement, be competent to testify when he engages in a traffic stop? The officer in this case testified that he was the head of the traffic division and was a supervisor on the shift that he was on. However, he also testified that his shift consisted of "normal patrol." In the city of Parma Heights this would entail, in addition to traffic enforcement, cruising the city to prevent crime, which would include the potential of answering non-traffic calls, checking business locations for potential break-ins, and any other duty that a normal night shift police officer would do in a marked police car.

R.C. 4549.13 addresses the requirements of the minimally marked police vehicle. R.C. 4549.14, which must be read in conjunction with Evid.R. 601(C) as to the competency of an officer to testify, provides:

"Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, *such officer being on duty exclusively or for the main purpose of enforcing such laws,* is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code." (Emphasis added.)

There is no question that if Officer Brown were on duty exclusively for the enforcement of traffic laws, he would be competent to testify. The issue here is whether the officer, in his duties, was engaged in traffic enforcement for his "main purpose." If he was not, then he is incompetent to testify. If he was, then he is competent to testify.

This court has reviewed the cases of *Columbus v. Stump* (1974), 41 Ohio App.2d 81, 70 O.O.2d 86, 322 N.E.2d 348, and *State v. Post* (1988), 50 Ohio Misc.2d 16, 553 N.E.2d 704. Both cases relate to this issue as the court has examined it. In the *Post* case, the officer was on duty and on his way to the police department where he served as a supervisor. The officer testified that he was not on duty exclusively for traffic control and, in fact, very rarely became involved with traffic offenses, except for in his supervisory capacity. In that case, the court permitted the officer to testify under Evid.R. 601(C). The court in that decision noted that the primary purpose of R.C. 4549.14's and Evid.R. 601(C)'s adoption was for preventing speed traps and to provide uniform traffic control in an effort to make driving safe. The *Post* case also cited the *Stump* case in its ruling and additionally cited *State v. Thobe* (1961), 91 Ohio Law Abs. 92, 191 N.E.2d 182, where a village chief of police, although not in uniform, was not

incompetent to testify on a traffic stop, since he was charged with a whole spectrum of duties required as a chief of police and could not be held to be exclusively in the business of traffic control.

In the *Stump* case, two police officers in a minimally marked cruiser observed a traffic violator who had left the city of Worthington and ended in the city of Columbus. A Columbus police officer made a traffic arrest. The officer who testified was in the unmarked vehicle and was not in uniform. The original purpose of the testifying officer was to check illicit activities outside a bar. Their observations of the traffic violation occurred as a result of their unrelated investigation. Parma Heights, as in the case of the city of Worthington, is a smaller city police department, so the logic of the *Stump* case is applicable here. In *Stump,* the court made the following determination:

"The case clearly describes the intention of the legislature to eliminate abuses in the enforcement of traffic laws. * * * The problem of the less populous subdivisions, which employ only a limited number of police officers, or get along with just one, * * * is a decidedly different problem.

"The Worthington police officer makes it clear that he had, at least, more than one duty on the evening of November 17, 1973, and by reason of being in the business of checking Friar Tuck's Bar at 2 a.m., when traffic is ordinarily very light, could not be said to have been 'exclusively' assigned to traffic control. The elusive definition of the concept of 'main purpose' is the troublesome portion of the legislative exclusion.

" 'Main purpose' must involve the complete assignment of duty for the Worthington police officer for the 'trick' he worked as a whole. If that assignment included narcotics control efforts and the patroling of the city for protection against the many forms of law breaking, then it cannot be said that traffic control was the 'main purpose' of his assignment that night. To attempt to segment his general duties from his assignment for a particular night is to create a limitation which ignores the practicalities of a police assignment. * * * The entire duty of the officer, be it multiple or single, must be respected and to do otherwise flies in the face of the intent of the legislature as pointed out by the Supreme Court in [*Dayton v.*] *Adams* [ (1967), 9 Ohio St.2d 89, 38 O.O.2d 223, 223 N.E.2d 822], *supra.*

"A reasonable interpretation in the face of cold practicalities, with respect for the broader purpose, or intent of the legislature, requires that 'main purpose' apply to the whole period of duty of the officer concerned, and not to the duty at the moment he makes an arrest." *Columbus v. Stump,* 41 Ohio App.2d at 84–85, 70 O.O.2d at 88–89, 322 N.E.2d at 350–351.

The court also notes that Judge Alba Whiteside, in his dissent in the *Stump* case, provided additional logic on this issue when he stated:

"In general, police officers are on duty for enforcing all laws at all times. It would indeed be an onerous burden to require proof of all the activities a police officer had engaged in during a period of duty in order to ascertain whether or not he was on duty for the main purpose of enforcing motor vehicle or traffic laws.

"* * *

"This points out one of the main purposes of the statutes—namely, to enable a motorist to know whether a person chasing or stopping him is, in fact, a police officer, or is someone else with other purposes in mind, especially late at night, as in this case.

"Whether a police officer is on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws * * * is to be determined by the duty in which the officer is engaged at the time and place he makes, or participates, or assists in making an arrest for a violation for such laws. It is not to be determined by the particular assignment the officer is engaged in immediately prior or subsequent thereto, nor by duties he may have primarily engaged in during his tour of duty." *Columbus v. Stump*, 41 Ohio App.2d at 88–89, 70 O.O.2d at 90–91, 322 N.E.2d at 352–353.

In reading both this opinion and dissent, and the *Post* case, this court is satisfied that a police officer may use a minimally marked police vehicle, on day shift or night shift, where the officer, in his normal patrol cruising, may engage in activities other than exclusive traffic enforcement. The officer in this case was the traffic supervisor, so it is logical to assume that his traffic duties were greater than those of a normal patrol officer. Although the officer engaged in basic patrol as well, he was constantly on observation as he cruised the city for potential traffic violations. The court therefore finds that the officer was competent to testify under Evid.R. 601(C) and R.C. 4549.14, as he was engaged in appropriate purposes as set forth in the rule and the statute.

The defendant's motions to suppress and dismiss are therefore denied. This matter will be scheduled for pretrial for further proceedings.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendant's motion to suppress be and is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant's motion to dismiss be and is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this matter shall be set for pretrial on March 30, 1998 at 9:00 a.m. for further proceedings.

*Judgment accordingly.*