The CITY OF CLEVELAND

v.

MARTINEZ.

2003-Ohio-7046.]

Cleveland Municipal Court,
Cuyahoga County, Ohio.

No. 2002 TRD 107278.

Decided March 25, 2003.

Gina Villa, Assistant City Prosecutor, for plaintiff.

Hector Martinez Jr., pro se.

RALPH J. PERK JR., Judge.

{¶ 1} Defendant was charged with speeding, in violation of Cleveland Codified Ordinances 433.03. The court heard this case as a bench trial on February 12, 2003. The city was represented by assistant city prosecutor Gina Villa; defendant appeared pro se.

{¶ 2} The testimony revealed that defendant was stopped and ticketed by Ptl. John Kotner, of the Cleveland Police Department ("CPD") Traffic Enforcement Unit, on November 7, 2002, at approximately 4:10 p.m. Defendant was eastbound on Interstate 90 at West 117th Street, within the city of Cleveland. Ptl. Kotner was engaged in traffic enforcement duties at the time and testified that using radar, he tracked defendant driving 91 miles per hour in a marked 60–miles–per-hour zone. Ptl. Kotner testified that he was wearing a police uniform and driving a "minimally marked" CPD traffic-enforcement vehicle and not a standard zone car at the time he stopped defendant. The city introduced three photographs of

the officer's vehicle into evidence. Ptl. Kotner also testified that one of his functions that day was to generate revenue for the city of Cleveland by writing traffic tickets that would result in the imposition of fines.

{¶ 3} For the reasons that follow, the court hereby finds defendant not guilty.

## I. Traffic Regulation and Ticketing

{¶ 4} A city's authority to regulate traffic comes from the Constitution of Ohio. *Linndale v. State* (1999), 85 Ohio St.3d 52, 706 N.E.2d 1227; *State v. Parker* (1994), 68 Ohio St.3d 283, 626 N.E.2d 106. Ohio cities have the authority to exercise all powers of self-government. Section 3, Article XVIII, Ohio Constitution; *State ex rel. Zielonka v. Carrel* (1919), 99 Ohio St. 220, 124 N.E. 134.

{¶ 5} The exercise of the police power "is valid if it bears a real and substantial relationship to the public health, safety, morals, or general welfare, and if it is not unreasonable or arbitrary." *Ottawa Cty. Bd. of Commrs. v. Marblehead* (1999), 86 Ohio St.3d 43, 711 N.E.2d 663; *Phillips v. State* (1907), 77 Ohio St. 214, 82 N.E. 1064; *Dublin v. State* (2002), 118 Ohio Misc.2d 18, 769 N.E.2d 436. Legislation in furtherance of a city's police power "is only limited by the public welfare and the [state] Constitution." *Commrs. of Franklin Cty. v. Publ. Util. Comm.* (1923), 107 Ohio St. 442, 140 N.E. 87; *Columbus v. Truax* (1983), 7 Ohio App.3d 49, 7 OBR 60, 454 N.E.2d 184; *Dublin*, supra, 118 Ohio Misc.2d at 63, 769 N.E.2d 436. A municipal ordinance, or the application thereof, must not be "arbitrary, discriminatory, capricious or unreasonable." *Cincinnati v. Correll* (1943), 141 Ohio St. 535, 26 O.O. 116, 49 N.E.2d 412; *Richmond Hts. v. LoConti* (1969), 19 Ohio App.2d 100, 48 O.O.2d 227, 250 N.E.2d 84; *Truax*, supra, 7 Ohio App.3d at 51, 7 OBR 60, 454 N.E.2d 184. "[W]ide discretion is not unlimited discretion, and * * * reasonable presumptions require reasonable interpretation." *LoConti*, supra, 19 Ohio App.2d at 113, 48 O.O.2d 227, 250 N.E.2d 84.

{¶ 6} The Ohio Traffic Rules "shall be construed and applied to secure the fair, impartial, speedy and sure administration of justice, simplicity and uniformity in procedure, and the elimination of unjustifiable expense and delay." Traf.R. 1(B); *Cleveland Hts. v. Perryman* (1983), 8 Ohio App.3d 443, 8 OBR 567, 457 N.E.2d 926; *State v. Bogadi* (1982), 5 Ohio App.3d 124, 5 OBR 282, 449 N.E.2d 785; *Youngstown v. Starks* (1982), 4 Ohio App.3d 269, 4 OBR 488, 448 N.E.2d 480. A city must not use its officers' ticket-writing authority to transform a highway into "its personal ATM." *Linndale*, supra, 85 Ohio St.3d at 55, 706 N.E.2d 1227 (Pfeifer, J., dissenting).

{¶ 7} An ordinance that purports to impose a license or other fee may, in reality and as applied, wrongfully impose an excise tax on an occupation, privilege, or franchise. A license fee is not meant to raise revenue but is for regulatory purposes only. *Firestone v. Cambridge* (1925), 113 Ohio St. 57, 148 N.E. 470; *LoConti,* supra, 19 Ohio App.2d at 104, 111–112, 48 O.O.2d 227, 250 N.E.2d 84. Driving a motor vehicle is a privilege and not a right. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97; *Fell v. Ohio Bur. of Motor Vehicles* (1972), 30 Ohio App.2d 151, 59 O.O.2d 269, 283 N.E.2d 825. However, that privilege may not be forfeited without due process of law. *Bell v. Burson* (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. By analogy, it logically follows that the legitimate purpose of traffic fines is not to raise revenue but to enforce the law and protect public safety.

{¶ 8} A judge should not have a financial or pecuniary interest in a case before him. *Ward v. Monroeville* (1972), 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267; *Tumey v. Ohio* (1927), 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749; *State ex rel. Brockman v. Proctor* (1973), 35 Ohio St.2d 79, 64 O.O.2d 50, 298 N.E.2d 532. It is improper for a judge to hold a meeting with law enforcement officers to ask them to maintain a certain level of ticket-writing in order to pay for the construction of a new municipal building. *Disciplinary Counsel v. Kiacz* (2002), 94 Ohio St.3d 409, 763 N.E.2d 590. It is therefore clearly improper for police officers to write tickets with an eye towards enhancing the revenue of the city that employs them.

{¶ 9} A court must determine the weight to be given the evidence and the credibility of witnesses. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. After having done so in this case, and in light of Ptl. Kotner's testimony about his role in generating revenue for the city, the court must conclude that the ticket at issue was written largely, if not solely, to fill the city's coffers. Since such motive is improper and unlawful, defendant should be acquitted.

## II. Use of "Minimally–Marked" Police Cars

{¶ 10} R.C. 4549.13 provides:

{¶ 11} "Any motor vehicle used by a member of the state highway patrol or by any other peace officer, while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state * * * shall be marked in some distinctive manner or color and shall be equipped with, but need

not necessarily have in operation at all times, at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle." (Emphasis added.)

{¶ 12} Evid.R. 601 governs the competency of witnesses to testify and provides as follows:

{¶ 13} "Every person is competent to be a witness except:

{¶ 14} "* * *

{¶ 15} "(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of arrest was not using a properly marked vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute." (Emphasis added.) See, also, R.C. 4549.14; *S. Euclid v. Varasso–Burgess* (Oct. 12, 1995), Cuyahoga App. No. 68409, 1995 WL 601090.

{¶ 16} An officer whose uniform or vehicle is not in compliance with the law is incompetent to testify as a witness in any prosecution against a person he arrests or cites for violation of traffic laws. R.C. 4549.16; *State v. Clark* (1983), 10 Ohio App.3d 308, 10 OBR 513, 462 N.E.2d 436; *Dayton v. Adams* (1967), 9 Ohio St.2d 89, 90, 223 N.E.2d 822; *Euclid v. Barnes* (Aug. 1, 2002), Cuyahoga App. No. 79728, 2002 WL 1767395; *Euclid v. Corrigan* (Feb. 28, 2002), Cuyahoga App. No. 79535, 2002 WL 331960. The purpose of these requirements is to promote uniform traffic control across the state, and to prevent speed traps, unreasonable methods, or similar abuses in the enforcement of traffic laws. *State v. Maxwell* (1978), 60 Ohio Misc. 1, 14 O.O.3d 44, 395 N.E.2d 531; *Euclid v. Bagley* (Apr. 3, 1986), Cuyahoga App. No. 50457, 1986 WL 4083; *Adams,* supra; *Barnes,* supra; 1986 Ohio Atty.Gen.Ops. No. 2–82; see, also, 27 Ohio Jurisprudence 3d, Criminal Law, Sections 1522–1524. As the Court of Appeals for Franklin County noted:

{¶ 17} "One of the safety concerns addressed by the General Assembly in enacting the statutes was the hazard to members of the public that inevitably would result should a police officer, not clearly identified as such, confront a driver and attempt to require him to follow the officer's instructions. It requires little imagination to contemplate the unfortunate consequences should a frightened motorist believe that he was being forced off the road by a stranger. The General Assembly sought to avoid such mischief by requiring police officers on traffic duty to be identified clearly." *Columbus v. Murchison* (1984), 21 Ohio App.3d 75, 76, 21 OBR 79, 486 N.E.2d 236; see, also, *State v. Huth* (1986), 24 Ohio St.3d 114, 24 OBR 306, 493 N.E.2d 961; *Hamilton v. Jacobs* (1995), 100 Ohio App.3d 724, 654 N.E.2d 1057; *State v. Foster* (1992), 84 Ohio App.3d 214,

**42**

616 N.E.2d 595; *State v. Butler* (1991), 77 Ohio App.3d 143, 601 N.E.2d 510; *Columbus v. Stump* (1974), 41 Ohio App.2d 81, 70 O.O.2d 86, 322 N.E.2d 348; *State v. Post* (1988), 50 Ohio Misc.2d 16, 553 N.E.2d 704.

{¶ 18} The court has carefully reviewed the three photographs of the CPD vehicle at issue in this case. They depict an entirely black vehicle with the word "POLICE" appearing in white capitalized block letters a few inches high on the right rear upper trunk and on both the front right and left quarter panels. A small CPD shield insignia appears in front of and slightly below the word "POLICE" on both quarter panels. The number "7222" appears in white on both front and rear license plates, which apparently were not issued by the Bureau of Motor Vehicles. The same number also appears just behind and above both front tires. The vehicle has a large antenna on its trunk, a reinforced front bumper, and a single, dark blue police light on the roof above the driver's seat.

{¶ 19} The markings of a police car must reasonably distinguish it from other vehicles on the highways and roads. *State v. Kaplan* (1994), 74 Ohio Misc.2d 55, 658 N.E.2d 825. In the court's judgment, the markings of Ptl. Kotner's police car did not reasonably distinguish it from other vehicles and failed to adequately comply with the mandate of R.C. 4549.13. This is due to the smallness of the "POLICE" lettering and of the CPD badges and the lack of a distinctive overall color of the car. The average motorist pulled over by a CPD officer in this car or one like it would not reasonably be on notice that he had been stopped by a duly-authorized police officer. As the Cuyahoga County Court of Appeals held in a similar case, "[E]ven if an observer discerned the law enforcement character of the vehicle from the light on top, the vehicle appears at most to belong to a private security guard rather than a public law enforcement officer acting under color of law." *Varasso–Burgess,* supra, at 3.

{¶ 20} Pursuant to Evid.R. 601(C), Ptl. Kotner was incompetent to testify. As noted above, this case was heard as a bench trial. In striking Ptl. Kotner's testimony from its consideration, the court necessarily comes to the conclusion that the city did not prove its case beyond a reasonable doubt. Defendant must therefore be found not guilty.

{¶ 21} It is so ordered this 25th day of March, 2003.