[Cite as *State v. Eitniear*, 2025-Ohio-5445.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Sylvania

    Appellee

v.

Christopher R. Eitniear, Jr.

    Appellant

Court of Appeals No.    {48}L-24-1261
{48}L-24-1280

Trial Court No.  TRC241433

**DECISION AND JUDGMENT**

Decided: December 5, 2025

* * * * *

Heather L. Pentycofe, City of Sylvania Chief Prosecutor, and
Jeffrey D. Lingo, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this consolidated appeal, defendant-appellant, Christopher Eitniear, Jr., appeals the February 6, 2025 judgment of the Sylvania Municipal Court, convicting him of speeding and operating a vehicle while intoxicated. For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} Christopher Eitniear, Jr. was pulled over by Sylvania Police Officer Richard Heber for driving 49 miles per hour in a 35-mile-per-hour zone. During the stop, Heber detected the odor of alcohol and observed that Eitniear's eyes were bloodshot and glassy. Eitniear, who was under the age of 21, admitted to consuming two beers. He performed field sobriety tests and submitted to a breathalyzer test. Eitniear exhibited six clues on the horizontal gaze nystagmus test, and zero clues on the walk-and-turn and one-leg stand tests. His breath-alcohol content was .049, above the legal limit of .02 for persons not of legal drinking age. Eitniear was charged with operating a vehicle under the influence of alcohol under both R.C. 4511.19(B)(3) and 4511.19(A)(1)(a), and speeding under Sylvania Municipal Code 333.03.

{¶ 3} In anticipation of trial, Eitniear filed a motion to suppress. He argued that because Officer Heber was on duty for the exclusive or main purpose of enforcing traffic laws while operating a police vehicle that did not comply with R.C. 4549.13, he was incompetent to testify under R.C. 4549.14. Following a hearing, the trial court denied Eitniear's motion to suppress.

{¶ 4} After his motion to suppress was denied, Eitniear entered a plea of no contest to all three charges. The trial court made a finding of guilty, referred the matter for a presentence investigation, and continued the matter for sentencing. It ultimately vacated its finding of guilty as to the violation of R.C. 4511.19(B)(3) and the State dismissed that charge. The court sentenced Eitniear for the violation of R.C. 4511.19(A)(1)(a) and speeding.

2.

**{¶ 5}** Eitniear appealed. He assigns the following error for our review:

The trial court erred when it admitted testimony contrary to R.C. 4549.13, 4549.14, and Evid.R. 601(C)[1].

## II. Law and Analysis

**{¶ 6}** R.C. 4549.13 requires that "[a]ny motor vehicle used by a . . . peace officer, while said officer is on duty for the exclusive or main purpose of enforcing the . . . traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or color and shall be equipped with . . . at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle. . . ." If an arresting officer is on duty exclusively or for the main purpose of enforcing such laws and was using a motor vehicle that does not comply with R.C. 4549.13, the officer will be deemed incompetent to testify under R.C. 4549.14 and Evid.R. 601(B)(4).

**{¶ 7}** The undisputed evidence at the suppression hearing was that the vehicle Officer Heber was using when he arrested Eitniear did not have a flashing, oscillating, or rotating colored light mounted outside on top of the vehicle. The only issue on appeal is whether the trial court erred when it concluded that Officer Heber was not on duty for the exclusive or main purpose of enforcing traffic laws, thereby rendering him competent to testify.

**{¶ 8}** Competency is a preliminary question for the trial court. *W. Unity v. Hill*, 1993 WL 306574, *3 (6th Dist. June 30, 1993). The defendant bears the burden of demonstrating that an officer is incompetent to testify under R.C. 4549.14 and Evid.R.

---

[1] The pertinent evidentiary rule has been renumbered Evid.R. 601(B)(4).

3.

601(B)(4). *State v. Cass,* 2018-Ohio-4405, ¶ 23 (5th Dist.). "The decision to permit a witness to testify rests with the discretion of the trial court." *Id.,* citing *Columbus v. Robbins*, 61 Ohio App.3d 324, 327 (10th Dist. 1989). We review the trial court's decision for an abuse of discretion. *State v. Auxter*, 1996 WL 475926, *1 (6th Dist. Aug. 23, 1996). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*, 2019-Ohio-223, ¶ 13 (10th Dist.). "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.,* quoting *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 2008-Ohio-3567, ¶ 11 (10th Dist.). And an unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.*

{¶ 9} "R.C. 4549.14 was enacted to provide uniformity in traffic control and to curb the 'speed traps' that were often operated by municipal and township peace officers in unmarked cars." *State v. Huth*, 24 Ohio St.3d 114, 115-16 (1986), citing *Dayton v. Adams*, 9 Ohio St.2d 89, 90 (1967). It "was certainly not intended to inhibit all police officers, except those primarily on traffic duty, from arresting a person violating traffic or motor vehicle laws." *Id.* To that end, to succeed in showing that Officer Heber was not competent to testify, Eitniear needed to show that Heber was "on duty for the exclusive or main purpose of enforcing the traffic laws."

{¶ 10} The Ohio Supreme Court clarified in *Huth* what it means to be "on duty for the exclusive or main purpose of enforcing the . . . traffic laws." In that case, a sheriff's

4.

deputy was working at his assigned duty as a full-time security guard at an airport. He was driving an airport security vehicle that did not comply with R.C. 4549.13. Airport property was not entirely contiguous, so he sometimes traveled public roads as he patrolled the airport property. While doing so, he observed the defendant commit a traffic violation, so he attempted to initiate a stop of the vehicle. The defendant fled, but was eventually arrested and charged with running a stop sign and fleeing.

{¶ 11} Before trial, the defendant sought to have the deputy declared incompetent to testify under R.C. 4549.14 and then-Evid.R. 601(C). The trial court denied the motion and the appellate court affirmed. On appeal to the Ohio Supreme Court, the Court recognized that the deputy's competency to testify hinged upon whether he was "on duty for the exclusive or main purpose of enforcing traffic laws," and it proceeded to interpret the phrase. *Id.* at 115.

{¶ 12} It held that this phrase "refer[s] to the officer's main purpose for his whole period of duty and not to his duty during the apprehension and arrest of the suspect." *Id.* at 116, citing *Columbus v. Stump*, 41 Ohio App.2d 81, 85 (10th Dist. 1974). In *Stump,* relied on by the Court, the court emphasized that "[t]he entire duty of the officer, be it multiple or single, must be respected[.]" *Stump* at 85. The Court found that at the time he observed the traffic violation, the deputy's primary duty was airport security, not traffic law enforcement. It concluded that his decision to pursue and arrest the defendant "did not change the 'main purpose' of his law enforcement duty." *Id.* at 116.

{¶ 13} Here, Sylvania Police Captain Douglas Hubaker and Officer Heber testified at the suppression hearing. Captain Hubaker testified that no Sylvania Police Officer is

5.

put on strictly traffic enforcement or exclusively road patrol. He explained that they have a "plethora of things they have to do during the day"—"there's literally thousands of things they could be doing during the day." Some of those things include responding to emergencies, doing traffic enforcement, finding lost children, completing training, and performing and logging "200-some-odd" business and house checks. Officers are encouraged to make an occasional traffic stop, but they are not required to run radar at any time during the day and sometimes do not have time to run radar at all. There is no expectation that officers write a minimum number of traffic tickets, and in fact, only 117 traffic citations were issued in Sylvania in the 90 days preceding the captain's testimony. Traffic enforcement "could be a small part of their day, it could not be a part of their day." While officers have the option to "run radar," he or she may be doing other things at the same time, such as online training or logging business and house checks.

{¶ 14} The arresting officer, Officer Heber, testified that he is employed "for road patrol" and was working third shift at the time of this incident. He said that his duties are never just limited to traffic enforcement. He described some of his other duties, which include patrolling his district, looking for suspicious vehicles, responding to 9-1-1 calls and calls for service, performing safety checks, removing objects or animals in the roadway, and observing homes that have been targets of vandalism. Heber explained that each shift also has a list of business checks to perform. When he performs a business check, he goes to Sylvania businesses and looks to make sure there is nothing unusual going on and that there are no open windows or unlocked doors.

6.

{¶ 15} Some of Officer Heber's most crucial testimony was not fully transcribed because it was "unintelligible." However, Heber testified that "a perfect night is to be able to drive up and down a street in my district (unintelligible-papers shuffling). . . . That would include running traffic radar, (unintelligible) stop lights, stop signs, in our area (unintelligible)." Heber said that "[t]hey would like us to do a 30 minute traffic special. But that isn't required to be speeding, stop signs, stop lights, (unintelligible), stuff like that."

{¶ 16} At the time of this incident, Heber was sitting stationary running radar. The radar alerts him to speeding violations with an audible tone, thus he can be involved in other tasks while running radar. He believes that this particular night, he was "filling out [his] business section" while running radar. He described that the area where he was sitting that night "is usually where [he] run[s] traffic" "pretty much every shift."

{¶ 17} Captain Hubaker and Officer Heber's testimony at the suppression hearing made clear that Officer Heber had multiple duties during his shift. While Heber did opt to run radar for some period of time during his shift, this was one of various tasks that he was charged with performing. Considering Heber's "main purpose for his whole period of duty"—as we are required to do under *Huth,* 24 Ohio St.3d 114—we conclude that the trial court did not abuse its discretion when it found that Heber was not on duty for the exclusive or main purpose of enforcing traffic laws. *See, e.g., Stump,* 41 Ohio App.2d at 84-85 (10th Dist.) (explaining that if officer's "assignment included narcotics control efforts and the patroling (sic) of the city for protection against the many forms of law breaking, then it cannot be said that traffic control was the 'main purpose' of his

7.

assignment"); *City of Bowling Green v. Kirby,* 1992 WL 32100, *2 (6th Dist. Feb. 21, 1992) (noting that appellant had acknowledged that main purpose was not traffic enforcement where officers' shift duties included "looking for any violations at all, such as littering, fights, disturbances, loud party calls, etc.").

{¶ 18} Eitniear complains that Heber did not "provide an accounting of his duties on this particular night."  He argues that "while checking local businesses during the night shift, or patrolling neighborhoods, or responding to calls may be included in the duties of a typical night, it is clear from the testimony that the main duties, in the absence of interruptions by other calls, is traffic enforcement."  But to render Heber's testimony incompetent, it was *Eitniear's* burden to show that Heber's main duty on this particular night was traffic enforcement.  And as the State points out, Heber testified that (1) "[t]hey would like us to do a 30 minute traffic special"—i.e., 30 minutes of an *eight-and-a-half hour* shift; and (2) he was "filling out [his] business section" when he was alerted to Eitniear's speed, suggesting that he had devoted some portion of his shift to performing business checks and was now logging those business checks.  Again, we find that the trial court did not abuse its discretion when it concluded that Eitniear failed to meet his burden to show that traffic enforcement was the main purpose for Heber's whole period of duty. The trial court's decision was not unreasonable, arbitrary, or unconscionable.

{¶ 19} We find Eitniear's assignment of error not well-taken.

8.

## III. Conclusion

**{¶ 20}** Although Officer Heber was using a motor vehicle that did not have a flashing, oscillating, or rotating colored light mounted outside on top of the vehicle as required under R.C. 4549.13, the trial court did not abuse its discretion when it concluded that he was not on duty for the exclusive or main purpose of enforcing traffic laws. Heber was, therefore, not incompetent to testify under R.C. 4549.14 and Evid.R. 601(B)(4). We find Eitniear's sole assignment of error not well-taken.

**{¶ 21}** The February 6, 2025 judgment of the Sylvania Municipal Court is affirmed. Eitniear is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.        _____

                                   _____
                                               JUDGE

Christine E. Mayle, J.       
CONCUR.

                                   _____
                                               JUDGE

Myron C. Duhart,J.       
DISSENTS AND WRITES
SEPARATELY.

**DUHART, J., dissenting.**

{¶ 22} Because I believe Eitniear met his burden of establishing that Officer Heber's main purpose on the night at issue was enforcing traffic laws, and that it was an abuse of discretion for the trial court to find otherwise, I respectfully dissent from the conclusion reached by the majority, and I would reverse the decision of the trial court.

{¶ 23} While there was testimony as to what Officer Heber *could* do on a shift, the *only* testimony presented as to what he *actually did* on that particular day after the conclusion of roll call was running radar and possibly checking businesses.

{¶ 24} Officer Heber also testified as to what would be a perfect night, which would be to "drive up and down a street in my district ….. That would include running traffic radar (unintelligible) stop lights, stop signs, in our area (unintelligible)." This testimony establishes that a perfect night is mainly traffic enforcement, and there is very little testimony as to anything Officer Heber *actually* did that night to interrupt what would have been a perfect night.

{¶ 25} This is not an instance where Officer Heber was performing a duty that was not traffic-related and he just noticed a traffic offense. Rather, this is a situation where Officer Heber was running radar for the purpose of enforcing traffic laws at a place where "pretty much every shift [that he is in that district] that's usually where [he] run[s] traffic." This is further highlighted by the fact that Officer Heber was in a vehicle that was not equipped with a flashing, oscillating or rotating colored light mounted outside on top of the vehicle, as required by R.C. 4549.13. Because there is scant testimony that Officer Heber was not doing much other than traffic enforcement, I would find that

10.

Eitniear met his burden of establishing that Officer Heber was on duty for the main purpose of enforcing traffic laws and that the trial court erred in not suppressing his testimony.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.