[Cite as *Cleveland v. Martin*, 2018-Ohio-740.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105420**

## CITY OF CLEVELAND

PLAINTIFF-APPELLANT

vs.

## CALVIN MARTIN

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2016 TRC 027709

**BEFORE:** S. Gallagher, J., Keough, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 1, 2018

**ATTORNEYS FOR APPELLANT**

Barbara A. Langhenry
City of Cleveland
Director of Law
By: Lorraine Coyne
Assistant Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, Ohio    44113

Kimberly G. Barnett-Mills
Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland Ohio   44113


**ATTORNEYS FOR APPELLEE**

Daniel J. Wodarczyk
Douglass & Associates Co., L.P.A.
4725 Grayton Road
Clevevland, Ohio    44135

Britt Newman
1280 West Third Street, First Floor
Cleveland, Ohio    44113

Eric Norton
Norton Law Firm Co., L.P.A.
Cedar-Grandview Building, Suite 6
12434 Cedar Road
Cleveland Heights, Ohio   44106

SEAN C. GALLAGHER, J.:

{¶1} The city of Cleveland appeals from the interlocutory judgment granting Calvin Martin's motion to suppress all evidence obtained during a traffic stop. We reverse and remand for further proceedings.

{¶2} Martin was charged with violations of R.C. 4511.33, marked lane violations; R.C. 4510.11(A), driving under a suspended license; and R.C. 4511.19(A), operating a vehicle while under the influence of alcohol. Martin filed a motion to suppress all evidence. He claims that the arresting police officer did not articulate a reasonable suspicion justifying the initial stop based on the strength of the city's evidence in support of the marked lane violation. According to Martin, the recording of the traffic encounter demonstrated that although the tires of Martin's vehicle touched the lane boundary lines on several occasions, the evidence was insufficient to definitively prove that the tires completely crossed the boundary markers. In the alternative, Martin claims that even if the stop was valid, the officer lacked a reasonable and articulable suspicion justifying the administration of field sobriety tests and that those tests were not conducted according to the National Highway Traffic Safety Administration standards.

{¶3} The arresting officer encountered Martin around 2:00 a.m. on a Sunday morning driving in the rightmost, eastbound lane on I-90. The officer witnessed Martin drift over the white hash marks of an exit lane, lazily veer back into the through lane, and cross over the solid white line dividing the exit lane and the shoulder of the highway before drifting back into the through lane. After the second perceived infraction, the officer initiated a traffic stop.

{¶4} While approaching the vehicle, the officer detected an odor of alcohol in the vehicle compartment and he also noticed that Martin's eyes were bloodshot. The officer asked Martin for his driver's license, and Martin admitted he was driving under suspension. Martin was then removed from his vehicle and acknowledged his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officer noted that the odor of alcohol followed Martin, who admitted the consumption of one or two alcoholic drinks that evening. Because of the erratic driving, Martin's bloodshot eyes, and the persistent odor of alcohol, the officer proceeded to administer field sobriety tests. Martin failed the tests and was arrested for driving under the influence of alcohol.

{¶5} The trial court suppressed all of the city's evidence, even the evidence supporting the marked lane violation and the driving under suspension. Tr. 66:4-12 (for "the driving under the influence charge, I think that the tests are suppressed. But as it relates to the rest of the stop, I'm thinking your predicate is also suppressed too."). According to the trial court, the marked lane violation that occurred was minor, and therefore, the officer lacked reasonable suspicion justifying the initial traffic stop. Further, the trial court concluded that the officer's observation of the odor of alcohol and bloodshot eyes was insufficient to support a reasonable and articulable suspicion justifying the administration of the field sobriety tests.

{¶6} Appellate review of a motion to suppress involves mixed questions of law and fact. "When considering a motion to suppress, the trial court assumes the role of

trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). The trial court's findings of fact must be accepted only if supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). After "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). The facts are undisputed in this case; the only issue is the application of the facts to the law and the legal conclusions that are drawn from the trial court's review of the evidence.

{¶7} The trial court erred in suppressing the evidence of Martin's marked lane violation and Martin's admission to driving under suspension. The trial court concluded that a marked lane violation occurred, but that the violation was minimal. It is well settled that "[a]n officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 17. Martin's sole defense to the traffic violation was that the strength of the city's evidence in support of a marked lane violation was questionable in light of the distorted depiction of the violation in the grainy dashboard camera footage. Although this may be grounds to challenge the merits of the charge, an officer need only form a reasonable and articulable suspicion that a

crime occurred in order to initiate a traffic stop; he need not disprove all potential defenses to the criminal act. *Id.*

**{¶8}** In this case, the dashboard camera footage depicted at least two instances when it could not be readily discerned whether a marked lane violation actually occurred. R.C. 4511.33 (A)(1) provides that a vehicle must "be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." The officer believed that he witnessed such a violation, and he testified that although the dashboard camera footage was not clear, it depicted the tire completely crossing the boundary line. The trial court agreed that in at least one of the instances, the footage arguably depicted Martin's vehicle completely violating the boundary of his lane of travel. The initial stop was constitutionally valid.

**{¶9}** That the violations appeared minimal or de minimis in nature is irrelevant. *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus. "Trial courts determine whether any violation *occurred*, not the *extent* of the violation." (Emphasis sic.) *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 27 (7th Dist.).

**{¶10}** Our decision should not be interpreted to mean "that movement within one lane is a per se violation giving rise to reasonable suspicion." *Mays* at ¶ 20, citing *Hodge* at ¶ 45. "[I]nconsequential movement within a lane [does not] give law enforcement carte blanche opportunity to make an investigatory stop." *Id.* Nevertheless, when an

"officer could reasonably conclude from a person's driving outside the marked lanes that the person is violating a traffic law, the officer is justified in stopping the vehicle." *Id.* Further, even if an infraction is not observed, an officer has a duty to investigate erratic driving in order to protect the public, and the driver himself, from driving while under the influence, driving while mentally fatigued, or even from driving with some mechanical defect of the vehicle. *Hodge* at ¶ 46; *Chagrin Falls v. Bloom*, 8th Dist. Cuyahoga No. 101686, 2015-Ohio-2264, ¶ 9. Courts cannot impose a requirement on officers to definitively prove that a traffic violation occurred to justify the initial stop in all situations. In some cases, that may preclude officers from fulfilling their duty to the public at large.

{¶11} Nevertheless, the trial court in this case concluded that a marked lane violation occurred, but that the violation was nonetheless minor. Having concluded that a violation occurred, the stop is not unreasonable regardless of the extent of that violation. *Erickson* at syllabus.

{¶12} During the initial stages of that valid traffic stop, the officer asked Martin for his driver's license. Martin admitted he was driving under suspension, as defined under R.C. 4510.11(A), and that he could not produce a valid license. Martin could not be allowed to drive away, and the failure to produce a valid driver's license transformed the nature of the traffic stop. In light of the admission, the officer was justified in removing Martin from the driver's seat. As a result, the trial court erred in suppressing the evidence related to the driving under a suspended license charge.

{¶13} Once removed from the vehicle, Martin was advised, and voluntarily waived, his rights under *Miranda*. Martin then admitted he had consumed one or two alcoholic drinks that evening. In consideration of the erratic driving, the odor of alcohol that followed Martin, Martin's bloodshot eyes, Martin's admission to consuming alcoholic beverages, and the time of day, the trial court erred in suppressing the results of the field sobriety tests. We acknowledge that the officer did not testify to relying on Martin's admission regarding the consumption of alcohol. The dashboard camera footage is part of the trial record, and as such, it was part of the facts to be considered.

{¶14} Once a driver has been lawfully stopped, an officer may not administer field sobriety tests unless the invasion of privacy is separately justified by a reasonable suspicion based upon articulable facts that the motorist is impaired. *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio App.3d 56, 62, 711 N.E.2d 761 (11th Dist.1998). Importantly, reasonable suspicion does not require an officer to observe and relate overt signs of intoxication. "A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Cleveland v. Maxwell*, 8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 20, citing *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18. In *Evans*, the court outlined a nonexclusive list of factors to consider in making this determination. The factors include the following:

(1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.*, Tuesday morning);

(2) the location of the stop (whether near establishments selling alcohol);

(3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.);

(4) whether there is a cognizable report that the driver may be intoxicated;

(5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.);

(6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.);

(7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath;

(8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.);

(9) the suspect's demeanor (belligerent, uncooperative, etc.);

(10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and

(11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*Evans* at 63, fn. 2. No single factor controls the outcome.

**{¶15}** Martin was pulled over at 2:00 a.m. on a Sunday morning having been observed committing a marked lane violation, which is some evidence of erratic driving. Although the marked lane violation would not be sufficient to justify the field sobriety tests in and of itself, the officer noted the odor of alcohol upon approaching Martin's vehicle and described Martin's eyes as being bloodshot. Martin admitted to having consumed "one or two" alcoholic drinks that evening. Although the officer did not

expressly describe the intensity of that odor, he described the odor as being persistent, in that it followed Martin when he was lawfully removed from the vehicle. The fact that the odor followed Martin was indicative of more than the slight odor of alcohol deemed insufficient in some cases. *See, e.g., State v. Andrews*, 2d Dist. Greene No. 2016-CA-13, 2017-Ohio-1383, ¶ 58.

{¶16} Martin places undue emphasis on the officer's lack of a descriptive modifier in describing the intensity of the alcoholic odor. There is no requirement under Ohio law that a police officer specify the perceived strength of the odor in support of a reasonable articulable suspicion of driving under the influence of alcohol. It is but one factor for consideration under the totality of the circumstances. *Evans.* In *Mays*, for example, it was concluded that the officer's observation of two possible marked lane violations, the unspecified intensity of an odor of alcohol in the vehicle, and the observation of bloodshot and glassy eyes supported a determination that the officer had probable cause to arrest the driver for driving under the influence. *Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 3, 21 ("the trooper had probable cause to arrest [the defendant] for driving while under the influence. We find no error in the trooper's decision"). Probable cause is a higher standard than reasonable and articulable suspicion and "the former subsumes the latter." *Id.* at ¶ 23, citing *State v. Evans*, 67 Ohio St.3d 405, 411, 1993-Ohio-186, 618 N.E.2d 162. The city's burden to demonstrate reasonable and articulable suspicion of driving while under the influence of alcohol is not a high one. *See, e.g., State v. Rice*, 1st Dist. Hamilton Nos. C-160668, C-160669, and C-160670,

2017-Ohio-9114_ (there is no requirement that an officer detect the odor of alcohol on or about the person in order to support a reasonable and articulable suspicion of driving under the influence).

{¶17} Although the intensity of the odor of alcohol is a factor to consider, the failure to be descriptive is not dispositive, especially when intensity can be inferred through context. In this case, the fact that the odor persisted with Martin's movement provides the context within which the officer reasonably formed his suspicion of impairment. Martin asks us to disregard the olfactory observation solely because the officer failed to provide a rote description of the odor's intensity. The failure to specify the odor's intensity was not dispositive in *Mays,* and therefore, it cannot be in this case.

{¶18} We have not been presented with a situation where a de minimis traffic violation and a slight odor of alcohol were the only factors justifying the field sobriety tests. The initial traffic stop and removal of Martin from his vehicle were independently justified based on the trial court's conclusion that marked lane violations occurred and based on Martin's admission to driving while under suspension. After waiving his rights, Martin admitted to consuming one or two alcoholic beverages. The officer noticed that Martin's eyes were bloodshot, and the officer detected a persistent odor of alcohol coming from Martin himself. Finally, it was 2:00 a.m. on a Sunday morning and the officer testified to basing his suspicion in part on Martin's driving behavior.

{¶19} Although the remaining *Evans* factors are not present or discussed, police officers are not required to produce evidence supporting every factor in order to articulate

a reasonable suspicion that the driver was impaired. Nor are police officers required to obtain evidence demonstrating overt intoxication, such as slurred speech or stumbling, sloppy behaviors, in order to justify the administration of field sobriety tests.

{¶20} As it stands, R.C. 4511.19(A) penalizes motorists for driving a vehicle while under the influence of alcohol. The phrase "under the influence" has been defined as

> the condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle.

*State v. Carozza*, 2015-Ohio-1783, 33 N.E.3d 556, ¶ 22 (5th Dist.), quoting *Toledo v. Starks*, 25 Ohio App.2d 162, 166, 267 N.E.2d 824 (6th Dist.1971). "Under the influence" means that the accused consumed some intoxicating beverage, in such a quantity "whether small or great" that adversely affected the accused's ability to operate a vehicle. *Id.* Not every case will involve overt signs of intoxication or violations of the traffic laws, and we cannot create such a requirement before the field sobriety tests are deemed constitutionally valid. *Bloom*, 8th Dist. Cuyahoga No. 101686, 2015-Ohio-2264, at ¶ 9.

{¶21} When all the applicable factors are considered in this case, the officer articulated a reasonable suspicion justifying the administration of field sobriety tests in consideration of Martin's driving behavior, his bloodshot eyes, the odor of alcohol, and Martin's admission to consuming alcoholic beverages before driving. The trial court

erred in suppressing the field sobriety tests.[1]  The decision of the trial court is reversed, and the matter is remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.  The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR

---

[1]Martin has not asked this court to affirm the trial court's decision on other grounds.  App.R. 3(C)(2) and App.R. 16(A)(7).