[Cite as *State v. Null*, 2020-Ohio-3222.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 8-19-50

    v.

KATHRYN B. NULL,                   O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Bellefontaine Municipal Court
Trial Court No. 19 TRC 00873

Judgment Affirmed

Date of Decision:   June 8, 2020

APPEARANCES:

    *Natalie J. Bahan* **for Appellant**

    *Crystal K. Welsh* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, Kathryn B. Null ("Null"), brings this appeal from the November 4, 2019 judgment of the Bellefontaine Municipal Court finding her guilty of OVI in violation of R.C. 4511.19(A)(1)(a) after Null entered a plea of no contest to the charge. On appeal, Null argues that the trial court erred by denying her suppression motion.

*Background*

{¶2} On February 22, 2019, at approximately 6:19 p.m., Null was stopped by Trooper Tyler Easter for traveling 69 mph in a 55 mph zone. Null pulled over immediately and Trooper Easter approached her vehicle. Trooper Easter asked Null for her license, indicated why he had stopped her, and he asked if Null was aware that she was speeding. Null responded that she was daydreaming.

{¶3} Trooper Easter smelled a "slight" odor of an alcoholic beverage emanating from inside the vehicle, and he noticed that Null's eyes were glassy. Null initially denied consuming any alcohol whatsoever. Trooper Easter asked Null for her registration and proof of insurance, and he thought that it took her longer than usual to provide them.

{¶4} Trooper Easter returned Null's insurance card and then asked Null to take off her seatbelt and talk to him outside the vehicle. Null got out of her vehicle, which Trooper Easter also thought took longer than usual in his experience, and

Trooper Easter informed Null that he wanted to remove her from the "odors" that he was smelling inside the vehicle to make sure she had not been drinking and driving. Null again denied drinking any alcohol and said she did not even drink socially.

{¶5} Following some further conversation outside the vehicle, Trooper Easter requested that Null sit in the backseat of his cruiser while he checked her license and issued her a citation for speeding. Null was in the backseat of Trooper Easter's cruiser for a little over six minutes. During that time Trooper Easter engaged her in conversation. When he went to let Null out of his backseat, he told Null that he still smelled what he thought was the odor of an alcoholic beverage coming from her person specifically. He told Null that she was being dishonest regarding her drinking. At that time Null admitted to drinking one beer around three p.m., though she stated she had brushed her teeth and used mouthwash. Trooper Easter then stated that it was not illegal to drive after having an alcoholic beverage, but it was illegal to drive while impaired. Trooper Easter stated that he wanted to check Null's eyes before letting her go to look for signs of impairment and she said, "okay."

{¶6} Trooper Easter administered the HGN test to Null and he detected four of six clues of impairment. He noted that Null's eyes were glassy, that Null had difficulty following instructions and that she struggled to focus on the stimulus. He

also noted that Null swayed back and forth during the test. Trooper Easter told Null that because of her performance on the HGN test he wanted to administer additional field sobriety tests.

{¶7} Trooper Easter then administered the Walk and Turn test wherein Null exhibited five clues of impairment, which included: moving her feet to keep her balance while listening to instructions, starting before instructions were completed, stopping while walking to steady herself, stepping off the line while walking (over three times), and walking the incorrect number of steps. Finally, Null performed the "One Leg Stand" test. Trooper Easter observed Null put her foot down five times in fourteen seconds and the test was stopped for Null's safety.

{¶8} Trooper Easter then placed Null under arrest for operating a vehicle impaired. After being transported to the jail, Null took a breath test and her BAC registered at .097.

{¶9} Ultimately Null was charged with Speeding in violation of R.C. 4511.21(D)(1), OVI in violation of R.C. 4511.19(A)(1)(a), and, in the alternative, OVI in violation of R.C. 4511.19(A)(1)(d). Null entered pleas of not guilty to the charges.

{¶10} On July 8, 2019, Null filed a suppression motion arguing, *inter alia*, that Trooper Easter lacked probable cause for the stop and arrest. She later supplemented this motion arguing that Trooper Easter lacked a sufficient basis to

request that Null perform field sobriety tests. Null also filed a motion to dismiss for the same reasons.

{¶11} On August 30, 2019, a hearing was held on the suppression motion and the motion to dismiss. At the hearing, the issues were narrowed to whether Trooper Easter had a sufficient basis to request that Null perform field sobriety tests. Null indicated that she was not contesting the legality of the traffic stop. Trooper Easter provided testimony at the hearing and video of the traffic stop was introduced into evidence.

{¶12} On October 9, 2019, the trial court filed an entry denying Null's suppression motion and her motion to dismiss. Following the denial of her motions, Null entered into a negotiated plea agreement wherein she agreed to plead no contest to OVI in violation of R.C. 4511.19(A)(1)(a), and in exchange the State agreed to dismiss the remaining charges. Her plea was accepted, she was found guilty as charged, and the matter proceeded to sentencing.

{¶13} Null was sentenced to serve thirty days in jail with twenty-seven suspended. The three remaining days in jail were also suspended on the condition that Null attend a certified driver's intervention program approved by the trial court. A judgment entry memorializing Null's sentence was filed November 4, 2019. It is from this judgment that Null appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court's finding that "the odor of alcohol intensified while in [the] closed cruiser" is against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**The trial court abused its discretion in denying the defendant-appellant's motion to suppress, because the trooper lacked reasonable articulable suspicion to request the performance of field sobriety tests based on the totality of the circumstances.**

{¶14} We elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶15} In Null's second assignment of error she contends that the trial court erred by overruling her suppression motion. Specifically, she contends that Trooper Easter lacked reasonable articulable suspicion to request the performance of field sobriety tests based on the totality of the circumstances.

Standard of Review

{¶16} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id*. citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at

¶ 8 citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.* citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

Analysis

{¶17} Null was initially stopped by Trooper Easter for traveling 69 mph in a 55 mph zone. She does not contest the legality of being stopped by Trooper Easter. She focuses instead on Trooper Easter's authority to further detain her by asking her to step out of the vehicle and, eventually, to perform field sobriety tests.

{¶18} Once a driver has been lawfully stopped, an officer may not administer field sobriety tests unless the invasion of privacy is separately justified by a reasonable suspicion based upon articulable facts that the motorist is impaired. *See, e.g.*, *State v. Schriml*, 3d Dist. Marion No. 9-12-32, 2013-Ohio-2845, ¶ 25; *Parma Hts. v. Dedejczyk*, 8th Dist. Cuyahoga No. 97664, 2012-Ohio-3458, ¶ 29, citing *State v. Evans*, 127 Ohio App.3d 56, 62 (11th Dist.1998). Importantly, reasonable suspicion does not require an officer to observe and relate overt signs of intoxication. *Cleveland v. Martin*, 8th Dist. No. 105420, 2018-Ohio-740, ¶ 14. Rather, "[a] court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Cleveland v. Maxwell*,

Case No. 8-19-50

8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 20, citing *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18; *Cleveland v. Martin*, 8th Dist. Cuyahoga No. 105420, 2018-Ohio-740, ¶ 14; *State v. Cromes*, 3d Dist. Shelby No. 17-06-07, 2006-Ohio-6924, ¶ 38, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002).

{¶19} Circumstances from which an officer may derive a reasonable, articulable suspicion that the detained driver was operating the vehicle while under the influence include, but are not limited to:

> **(1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (e.g., whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given**.

*State v. Schriml*, 3d Dist. Marion No. 9-12-32, 2013-Ohio-2845, ¶ 26, citing *State v. Evans,* 127 Ohio App .3d 56, 63, fn. 2 (11th Dist.1998). We do not view any

single factor in isolation. *State v. Macklin*, 5th Dist. Fairfield No. 17-CA-39, 2018-Ohio-2975, ¶ 28.

{¶20} Here, after approaching Null's vehicle, Trooper Easter detected the odor of an alcoholic beverage and he noticed Null's eyes were glassy.[1] While he did not notice any slurred speech, he felt that, based on his experience, Null took longer than usual to produce her proof of insurance. He then asked Null to get out of the vehicle in order to determine whether the odor of alcohol was emanating from inside the vehicle or from Null's person specifically. Outside of the vehicle, Trooper Easter asked Null again if she had consumed alcohol because he was smelling a "slight odor" of an alcoholic beverage from her person and her eyes were glassy. (Tr. at 16). Null again denied drinking any alcohol whatsoever. At that time Trooper Easter asked her to sit in the backseat of his patrol car while he checked her license and issued her a citation for speeding.

{¶21} Trooper Easter and Null engaged in small talk while Trooper Easter filled out the citation for speeding. After a little over six minutes Trooper Easter walked around his patrol car to let Null out of his vehicle. At that time he "could smell [the odor of alcohol] and it was a little stronger than what it was[.]" (Tr. at 25). Trooper Easter inquired again whether Null had consumed any alcohol and she admitted to having one beer around three p.m., or over three hours prior. Trooper

---

[1] Null pointed out on cross-examination at the suppression hearing that Trooper Easter did not put this in his report.

Easter informed Null that it was not illegal to consume alcohol and drive; rather it was illegal to drive while intoxicated. Trooper Easter indicated he wanted to check Null's eyes through the HGN test before letting her go and Null agreed.

{¶22} On appeal, Null argues that Trooper Easter lacked reasonable suspicion to request that Null perform field sobriety tests. In support, Null cites numerous, fact-specific cases wherein Ohio Appellate Courts have determined that an officer lacked reasonable suspicion to request the performance of field sobriety tests. *See, e.g., State v. Wood*, 9th Dist. Wayne No. 18AP0011, 2019-Ohio-3985 (where video entered into evidence contradicted officer's testimony, and, *inter alia*, officer did not notice an odor of alcohol while defendant was seated in his vehicle, no reasonable suspicion existed); *State v. Newsome*, 11th Dist. Ashtabula No. 2012-A-0019, 2012-Ohio-5826, ¶ 21 (where defendant's admission to consuming one large beer was the only factor officer relied upon, this admission alone was insufficient to establish reasonable suspicion of intoxication to initiate field sobriety tests); *State v. Reed*, 7th Dist. Belmont No. 05BE31, 2006-Ohio-7075 (where officer did not witness a moving violation or erratic driving, did not witness slurred speech, defendant was cooperative, officer noted a "slight" smell of alcohol, defendant had red glassy eyes and admitted to drinking two beers, officer lacked reasonable suspicion to initiate field sobriety tests).

{¶23} In this case, Null contends that Trooper Easter detected only the slight odor of an alcoholic beverage and this alone was not enough to initiate field sobriety tests. First, "[t]here is no requirement under Ohio law that a police officer specify the perceived strength of the odor in support of a reasonable articulable suspicion of driving under the influence of alcohol. It is but one factor for consideration under the totality of the circumstances." *City of Cleveland v. Martin*, 8th Dist. Cuyahoga No. 105420, 2018-Ohio-740, ¶ 16, citing *Evans*. Second, while Trooper Easter indicated the odor of an alcoholic beverage was "slight," he did note that he detected the odor once Null was outside the vehicle and when Null was being removed from the backseat of his cruiser. This would indicate that regardless of intensity, the odor was persistent and attached to Null's person rather than emanating from the vehicle. *See Martin* at ¶ 17.

{¶24} Third, Trooper Easter noted multiple additional factors leading to his suspicion that Null might be intoxicated in this instance such as Null's glassy eyes. Trooper Easter also felt that Null took longer than usual to produce her proof of insurance and to get out of her car. While these issues alone may be given very little weight, they are all factors to consider in the totality of the circumstances.

{¶25} Furthermore, and very importantly here, Trooper Easter detected erratic driving in Null significantly exceeding the speed limit. Null was traveling 69 mph in a 55 mph zone, which is indicative of erratic driving. This was not a

situation where Null was stopped for an equipment violation or a violation that some courts have described as "de minimus." *State v. Spillers*, Darke App. No. 1504, 2000 WL 299550 (March 24, 2000). Unlike an equipment violation, speeding is an indication of erratic driving, and it is a factor to consider in the totality of the circumstances when evaluating potential intoxication. *State v. Carter*, 5th Dist. Stark No. 2013CA00036, 2013-Ohio-5133, ¶ 14.

{¶26} Moreover, Null eventually admitted to consuming an alcoholic beverage despite denying it multiple times beforehand. At one point she even went so far as to state that she did not even drink alcohol socially.

{¶27} The record establishes that there were numerous factors that, when analyzed under the totality of the circumstances, support the trial court's determination. Cases regarding reasonable suspicion to initiate field sobriety tests, including those Null cited, are inherently fact-specific and no single factor can be viewed in complete isolation. Null emphasizes Trooper Easter's use of the word "slight" in describing the odor of alcohol as though it should be the *one* controlling factor here, but there were other factors leading to Trooper Easter's request. In fact, Trooper Easter did not even initially request that Null perform a full battery of field sobriety tests; rather, he wanted to check Null's eyes to insure she was not intoxicated before letting her go.[2] Only after Null exhibited several clues of

---

[2] Notably, Null agreed to perform the HGN test.

impairment in the HGN test, in addition to everything else he detected, did Trooper Easter ask Null to perform further field sobriety tests.

{¶28} Based on the totality of the circumstances we cannot find that the trial court erred in determining that Trooper Easter had a reasonable suspicion to initiate field sobriety tests in this case. Therefore, Null's second assignment of error is overruled.

*First Assignment of Error*

{¶29} In Null's first assignment of error she argues that a factual finding made by the trial court in denying her suppression motion was not supported by the evidence. Specifically, Null takes issue with the following determination.

> **Based on the foregoing, the Court finds that the officer had sufficient basis to request the defendant to submit to field sobriety tests when, after taking the defendant to his cruiser for a few minutes, she changed her story about drinking and *the odor of alcohol intensified while in his closed cruiser.***

(Emphasis added.) (Doc. Nos. 186-187). Null argues that the trial court's finding that "the odor of alcohol intensified while in [the] closed cruiser" was not supported by the testimony.

{¶30} In support of her argument, Null indicates that throughout Trooper Easter's testimony he characterized the odor of alcohol he detected as "slight." She also emphasizes that there was a divider in Trooper Easter's patrol car that prevented him from smelling alcohol while he was in the front seat. Null thus argues that the

trial court's statement that the odor of alcohol "intensified" is wholly unsupported by the record.

**{¶31}** Contrary to Null's interpretation of the record, Trooper Easter specifically testified as follows.

> **When I exited my vehicle after I had finished typing and I opened up the rear passenger door right next to where the defendant was, I could smell [the odor of alcohol] and it was a little stronger than it was, so at that point, obviously, I asked her [about drinking] again. She admitted to having one beer, and we did field sobriety tests.**

(Tr. at 25).

**{¶32}** Trooper Easter thus specifically testified that after being in the back of his vehicle the smell of alcohol from Null was "stronger than it was." (*Id.*) Merriam-Webster's Dictionary actually defines "intensify" in one manner as to "grow stronger or more acute." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/intensified?src=search-dict-hed, (accessed May 26, 2020). Based on this plain and ordinary definition of "intensify," the trial court's use of the word "intensified" is a fair characterization since Trooper Easter's testified that the odor was a "little *stronger*" after being in his cruiser. Therefore we cannot find that the trial court erred or mischaracterized the evidence and Null's first assignment of error is overruled.

*Conclusion*

**{¶33}** For the foregoing reasons Null's assignments of error are overruled and the judgment of the Bellefontaine Municipal Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**