[Cite as *State v. Stewart*, 2022-Ohio-199.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | Nos. 109867 and 109868 |
| v. | : | |
| JAMES STEWART, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 27, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-645843-A and CR-19-645843-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellant*.

Regis E. McGann, *for appellee* James Stewart.

Cullen Sweeney, Cuyahoga County Public Defender, and Paul A. Kuzmins, Assistant Public Defender, *for appellee* Leeandrew Ealom.

ON RECONSIDERATION[1]

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals an order granting two motions to suppress filed by defendants-appellees, James Stewart ("Stewart") and Leeandrew Ealom ("Ealom") (collectively "appellees"). The state claims the following error:

The trial court erred in granting James Stewart and Leeandrew Ealom's motion to suppress.

{¶ 2} We find merit to the appeal, reverse the trial court's judgment, and remand the case to the trial court for further proceedings.

## I. Facts and Procedural History

{¶ 3} Ealom and Stewart were charged in a nine-count indictment with three counts of drug trafficking in violation of R.C. 2925.03(A)(2) as alleged in Counts 1, 3, and 5; four counts of drug possession in violation of R.C. 2925.11(A) as alleged in Counts 2, 4, 6, and 7; and one count of possessing criminal tools in violation of R.C. 2923.14(A) as alleged in Count 8. Counts 1 through 8 included forfeiture of a scale, a cell phone, a gun, and money. Counts 3 and 5 included firearm specifications pursuant to R.C. 2941.141(A). In Count 9, Ealom, alone, was charged with improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(E)(1).

---

[1] The original decision in this appeal, *State v. Stewart*, 8th Dist. Cuyahoga Nos. 109867 and 109868, 2021-Ohio-2928, released on August 26, 2021, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

{¶ 4} Stewart and Ealom each filed a motion to suppress, arguing that Cleveland police did not have probable cause to initiate the traffic stop that led to the discovery of contraband. They further argued that officers detained them without reasonable suspicion and that the subsequent search of their vehicle was unlawful.

{¶ 5} The state opposed the motions to suppress, arguing the initial traffic stop was lawful because Stewart, who was driving the vehicle, was driving erratically, changed lanes multiple times without signaling, and later turned out of a gas station parking lot without signaling. The state argued that changing lanes and turning without a signal are violations of Cleveland Codified Ordinances ("C.C.O.") 431.14. Finally, the state argued that during the lawful stop, officers observed a firearm in plain view, which justified a search for weapons that led to the discovery of contraband in the vehicle.

{¶ 6} Detective Joseph Hess ("Det. Hess") testified at the suppression hearing that he and Detective Christopher Allen ("Det. Allen") were patrolling an area near East 140th Street and Kinsman on November 8, 2019, at approximately 4:12 p.m., in a police vehicle equipped with lights and sirens. Sergeant Jarrod Durichko ("Sgt. Durichko") was also patrolling the area in an undercover vehicle. Sgt. Durichko notified Detectives Hess and Allen that he observed a white Jeep Compass driving erratically and changing lanes multiple times without signaling. (Tr. 19.) The Jeep traveled eastbound on Union Avenue and turned into a gas station located at East 140th Street and Kinsman Road.

{¶ 7} As Detectives Hess and Allen approached the location, Sgt. Durichko notified them that the same vehicle exited the gas station and turned onto the roadway again without signaling. (Tr. 20.) By that time, Detectives Hess and Allen had reached the location, pulled behind the Jeep, and initiated a traffic stop. (Tr. 20.) Sgt. Durichko did not conduct the traffic stop because he was in an undercover vehicle.[2] (Tr. 20.)

{¶ 8} Det. Allen approached the driver's door and spoke to Stewart while Det. Hess approached the passenger side door and spoke with Ealom. (Tr. 21.) Det. Hess spoke with Ealom for approximately four minutes and then asked him to exit the vehicle for safety purposes and to facilitate communication. (Tr. 21.) As Ealom was exiting the vehicle, Det. Hess asked Ealom if he had any weapons on his person. (Tr. 22, 57.) Ealom replied: "Yes. I have a concealed carry." (Tr. 22, 71.) Det. Hess then observed a gun in the front-passenger door panel. (Tr. 22-23, 58.) Thereafter, Det.

---

[2] Traffic stops should generally be conducted by a uniformed officer in a marked car. *Parma Hts. v. Nugent*, 92 Ohio Misc.2d 67, 75, 700 N.E.2d 430 (M.C.1998). When undercover officers observe traffic violations and call in uniformed officers, who saw nothing of the original traffic violation, to initiate the traffic stops, police often uncover crimes, but at a price that negatively affects the relationship between police officers and citizens. The United States Justice Department and the city of Cleveland entered into a consent decree in 2015, to rebuild community trust with the city's police department. As part of that effort, the police department implemented substantial police training initiatives.

Det. Hess started his employment with the Cleveland Police Department approximately six years before the incident giving rise to this case. Thus, most, if not all, of his training would have been after the consent decree. He testified that he has initiated "hundreds" of traffic stops for traffic violations. Det. Hess also testified that he has had specialized training investigating narcotics, and "on-the-job" training that aids him in the performance of his job.

Hess placed Ealom in handcuffs for officer safety because Ealom failed to notify the officers that he had a concealed weapon. (Tr. 23-24.)

{¶ 9} Det. Hess rendered the weapon safe and searched the passenger compartment of the vehicle "for other weapons." (Tr. 25.) During the search, Det. Hess found multiple cell phones and a large roll of blank lottery tickets. (Tr. 25.) Det. Hess, who is a member of the Fourth District Vice Unit, testified based on his training and experience that these items were common "indicators of drug trafficking." (Tr. 25.) He explained that a blank roll of lottery tickets "is one of the No. 1 packaging materials for narcotics. It's up there with plastic baggies." (Tr. 26.) Det. Hess also found a digital scale with drug residue inside a pouch fastened to the back of the front passenger seat. (Tr. 27-28.)

{¶ 10} After finding the scale, the officers determined they had probable cause to search the rest of the vehicle. (Tr. 27.) In the back seat, the detectives found a hairbrush with a hidden compartment containing a bag of heroin and a bag of cocaine. (Tr. 28-29.) Detectives Hess and Allen then placed Stewart and Ealom under arrest and cited Stewart with a change of course violation pursuant to C.C.O. 431.14.

{¶ 11} In granting the motions to suppress, the court concluded that the city's change of course ordinance only applies to public streets and, therefore, does not apply to parking lots where Stewart turned onto Union Avenue. The trial court's written decision did not address the other alleged traffic violations, namely changing lanes without signaling and erratic driving. The court determined that because

Stewart did not violate any traffic ordinance by turning from a private parking lot onto a city street, the police had no reasonable justification for initiating the traffic stop of Stewart's vehicle and, therefore, the traffic stop violated the Fourth Amendment. The state now appeals the trial court's judgment pursuant to Crim.R. 12(K).

## II. Law and Analysis

## A. Standard of Review

{¶ 12} This court reviews a decision on a suppression motion under a mixed standard of review. "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). Therefore, a reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting the facts as true, the reviewing court must independently determine, without deference to the tri al court, whether the trial court properly applied the substantive law to the facts of the case. *Id.* An appellate court reviews the trial court's application of the law to its factual findings under a de novo standard. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100.

## B. The Traffic Stop

{¶ 13} The Fourth Amendment of the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords the same protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).

{¶ 14} There are, however, exceptions to the Fourth Amendment's warrant requirement. Although stopping an automobile and detaining its occupants constitutes a "seizure" under the Fourth Amendment, "a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). *See also Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996) ("[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *.").

**{¶ 15}** It is well established that "'[a] police officer may [initiate] a traffic stop of any motorist *for any traffic infraction*, even if the officer's true motive is to detect more extensive criminal conduct.'" *State v. Hrtsyak*, 8th Dist. Cuyahoga No. 108506, 2020-Ohio-920, ¶ 21, quoting *State v. Bennett*, 8th Dist. Cuyahoga No. 86962, 2006-Ohio-4274 (emphasis sic). "'[C]ourts determine whether any violation occurred, not the extent of the violation.'" *Cleveland v. Martin*, 2018-Ohio-740, 107 N.E.3d 809 (8th Dist.), quoting *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 27 (7th Dist.).

**{¶ 16}** Detectives Hess and Allen stopped Stewart's car because Sgt. Durichko advised them that Stewart was "driving erratically and switched lanes multiple times without signaling" and because they turned out of a gas station onto the roadway without signaling. (Tr. 19.) C.C.O. 431.14, governs "Signals Before Changing Course, Turning, or Stopping," and provides, in relevant part:

> No person shall turn a vehicle * * * or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.

C.C.O. 431.14(a)(1). Thus, C.C.O. 431.14(a)(1) requires one to use a turn signal when moving from right or left upon a highway. C.C.O. 401.61 defines the term "highway" as synonymous with the word "street" and includes "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel."

{¶ 17} The trial court concluded that the stop of Stewart's Jeep violated the Fourth Amendment because Stewart was not required to use a turn signal when turning out of the gas station parking lot onto a public street. The trial court concluded that no traffic violation occurred. However, even if a police officer is mistaken in his belief that a traffic violation occurred, the police officer's mistaken belief, if objectively reasonable, may constitute reasonable suspicion to justify a traffic stop. *State v. Spellacy*, 8th Dist. Cuyahoga No. 106909, 2019-Ohio-785, ¶ 24-32 . *See also State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 19, quoting *State v. Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871, ¶ 6 (1st Dist.) ("'[a] police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop.'"); *State v. Petty*, 4th Dist. Washington Nos. 18CA26 and 18CA27, 2019-Ohio-4241, ¶ 27 (Officer's erroneous, but reasonable, belief that a traffic violation occurred provided reasonable suspicion to justify a traffic stop.).

{¶ 18} Cleveland police issued Stewart a traffic ticket for turning out of the gas station without signaling. (Tr. 50-52.) The police, therefore, believed that turning out of the gas station without signaling constituted a violation of C.C.O. 431.14. This court recently held that pulling out of a gas station without using a turn signal is a violation of C.C.O. 431.14 and that such a traffic violation is a valid basis to effectuate a traffic stop. *State v. Marneros*, 8th Dist. Cuyahoga No. 109258, 2021-Ohio-2844, ¶ 25. Therefore, despite the trial court's conclusion to the contrary, the

officers had a reasonable belief that Stewart committed a traffic violation, and they had reasonable suspicion to stop Stewart's vehicle.[3]

{¶ 19} Although Detectives Hess and Allen did not witness the traffic violation, police may initiate investigatory stops based on the observations of other officers or citizens. *Lyndhurst v. Brickel*, 8th Dist. Cuyahoga No. 72322, 1998 Ohio App. LEXIS 2334 (May 28, 1998); *Beachwood v. Sims*, 98 Ohio App.3d 9, 14, 647 N.E.2d 821 (8th Dist.1994). Therefore, the traffic stop of Stewart's Jeep was constitutionally valid because Sgt. Durichko observed Stewart turn out of a gas station without signaling, and he had reasonable belief that the turn without signaling constituted a traffic violation. There was also testimony, not addressed by the trial court, that Stewart illegally changed lanes without signaling.

{¶ 20} Because the trial court found the traffic stop was unlawful, it did not analyze the legality of the interaction between the detectives and appellees following the initial stop. "[A]n appellate court limits its review to issues actually decided by the trial court in its judgment." *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21. Although an appellate court may make factual conclusions if the record provides a sufficient basis for review, we may not make legal

---

[3] Although the state did not cite *Marneros* in its brief, the state argued, among other things, that "[e]ven if detectives were mistaken that Stewart violated Cleveland Codified Ordinance § 431.14 or the evidence would be insufficient to prove the elements of the offense beyond a reasonable doubt, detectives had an objectively reasonable belief that a traffic violation occurred, thus constituting reasonable suspicion to justify the traffic stop." (State's merit brief p. 9.) Thus, the state not only argued in the trial court that turning out of the gas station without signaling was a valid basis for the traffic stop, it disputed the trial court's interpretation of C.C.O. 431.14 in its merit brief.

conclusions, such as whether the police had probable cause to search Stewart's vehicle, for the first time on appeal. *Id.*; *Philbin v. Cleveland*, 8th Dist. Cuyahoga No. 105767, 2018-Ohio-100, ¶ 26 (remanding case to trial court to consider the merits of an issue raised for the first time on appeal.)

{¶ 21} We, therefore, sustain the sole assignment of error and reverse the trial court's judgment. We remand the case to the trial court to consider whether Ealom promptly informed police that he had a concealed weapon and, thus, whether police had probable cause to search Stewart's vehicle following a lawful traffic stop.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, A.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR