[Cite as *State v. Carpenter*, 2023-Ohio-1702.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                   CASE NO.  2-22-20

     v.

LUCAS A. CARPENTER,                   O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No.  2022 TRC 00612

**Judgment Affirmed**

**Date of Decision:  May 22, 2023**

APPEARANCES:

     *Blaise Katter* **for Appellant**

     *Reed D. Searcy* **for Appellee**

Case No. 2-22-20

**WALDICK, J.**

{¶1} Defendant-appellant, Lucas A. Carpenter ("Carpenter"), brings this appeal from the August 16, 2022, judgment of the Auglaize County Municipal Court sentencing him to community control after Carpenter pled no contest to, and was convicted of, OVI in violation of R.C. 4511.19(A)(1)(d). On appeal, Carpenter argues that the trial court erred by overruling his suppression motion. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On February 13, 2022, Carpenter was charged with OVI in violation of R.C. 4511.19(A)(1)(a), OVI in violation of R.C. 4511.19(A)(1)(d)[1], and failing to properly stop at a "stop bar" in violation of R.C. 4511.43. Carpenter originally pled not guilty to the charges.

{¶3} On April 26, 2022, Carpenter filed a suppression motion arguing, *inter alia*, that the officer who stopped him lacked reasonable suspicion to conduct a traffic stop, and that the facts did not support the officer expanding the traffic stop into an OVI investigation. A hearing was held on Carpenter's suppression motion on June 7, 2022. The trial court took the matter under advisement and issued a written entry overruling Carpenter's suppression motion on July 19, 2022.

---

[1] The (A)(1)(d) charge alleges: "The person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath." According to the traffic ticket in this case, Carpenter's BAC was .161.

-2-

{¶4} On August 16, 2022, Carpenter entered a no contest plea to OVI in violation of R.C. 4511.19(A)(1)(d). The remaining charges against him were dismissed. The trial court found Carpenter guilty of the OVI charge and sentenced him to community control. Carpenter now brings the instant appeal, asserting the following assignment of error for our review.

**Assignment of Error**

**The trial court erred by overruling the motion to suppress.**

{¶5} In his assignment of error, Carpenter argues that the trial court erred by overruling his suppression motion. Specifically, he contends that the trial court erred by determining that the officer in this case had reasonable suspicion to expand the traffic stop into an OVI investigation.

Standard of Review

{¶6} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we

must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

Relevant Authority

**{¶7}** Once a driver has been lawfully stopped, an officer may not administer field sobriety tests unless the invasion of privacy is separately justified by a reasonable suspicion based upon articulable facts that the motorist is impaired. *See, e.g.*, *State v. Schriml*, 3d Dist. Marion No. 9-12-32, 2013-Ohio-2845, ¶ 25. Importantly, reasonable suspicion does not require an officer to observe and relate overt signs of intoxication. *Cleveland v. Martin*, 8th Dist. Cuyahoga No. 105420, 2018-Ohio-740, ¶ 14. Rather, "[a] court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *Cleveland v. Maxwell*, 8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 20, citing *State v. Dye*, 11th Dist. Portage No. 2001-P-0140, 2002-Ohio-7158, ¶ 18; *State v. Cromes*, 3d Dist. Shelby No. 17-06-07, 2006-Ohio-6924, ¶ 38, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002).

**{¶8}** Circumstances from which an officer may derive a reasonable, articulable suspicion that the detained driver was operating the vehicle while under the influence include, but are not limited to:

> **(1)  the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop**

**(e.g., whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given**.

*State v. Schriml*, 3d Dist. Marion No. 9-12-32, ¶ 26, citing *State v. Evans,* 127 Ohio App.3d 56, 63, fn. 2 (11th Dist.1998). "We do not view any single factor in isolation." *State v. Null*, 3d Dist. Logan No. 8-19-50, 2020-Ohio-3222, ¶ 19, citing *State v. Macklin*, 5th Dist. Fairfield No. 17-CA-39, 2018-Ohio-2975, ¶ 28.

Evidence Presented at Suppression Hearing

**{¶9}** Patrolman Adam Baker of the Wapakoneta Police Department testified that on February 13, 2022, at approximately 3:09 a.m., he was on patrol when he observed Carpenter commit a "stop bar violation." (Tr. at 6). Patrolman Baker elaborated, indicating that Carpenter's vehicle was over the stop bar, which was marked on the pavement. Patrolman Baker testified that he followed Carpenter, and that he observed Carpenter commit another "stop bar violation" at a second stop

sign. The second violation was captured on Patrolman Baker's dash camera and the recording from that incident was introduced into evidence.[2] Based on his observations of the two traffic infractions, Patrolman Baker conducted a traffic stop of Carpenter's vehicle.

{¶10} Patrolman Baker approached Carpenter's vehicle from the passenger side. Carpenter was in the driver's seat and there was a passenger in the front of the vehicle. Patrolman Baker explained the purpose of the stop then asked Carpenter for his license and insurance. Carpenter promptly produced his license but he did not have his insurance paperwork with him. Patrolman Baker then briefly went back toward his vehicle and spoke with dispatch. After doing so, he returned to Carpenter's vehicle, this time approaching the driver's side.

{¶11} Once Carpenter rolled down his window, Patrolman Baker asked who had been drinking because he could smell a "strong" odor of alcohol from inside the vehicle. (State's Ex. 2b). Carpenter and the passenger both indicated that the passenger had been drinking. The passenger claimed that Carpenter had just taken him to Waffle House. Although Carpenter claimed he had not been drinking, Patrolman Baker testified that Carpenter's eyes were bloodshot and glassy.

---

[2] The first violation was not on the recorded footage. As to the second violation, we note that the "stop bar" had faded over time but it was still visible, and the video corroborates Patrolman Baker's testimony that Carpenter's vehicle was over the "stop bar."

{¶12} After speaking with Carpenter and the passenger, Patrolman Baker asked Carpenter to step out of the vehicle because he wanted to make sure Carpenter was "good to drive." Patrolman Baker testified that when he removed Carpenter from the vehicle, he could smell the odor of an alcoholic beverage specifically emitting from Carpenter's breath. Patrolman Baker asked Carpenter if he had consumed any alcoholic beverages and Carpenter stated that he had two beers, though Carpenter claimed he had consumed them approximately four hours prior. Based on all of his observations during the interaction, Patrolman Baker asked Carpenter to perform field sobriety tests.

Analysis

{¶13} At the outset of our analysis, we note that while Carpenter challenged the lawfulness of his traffic stop at the trial court level, he does not explicitly renew that challenge on appeal. Nevertheless, even if he did, the traffic stop herein was lawful based on Patrolman Baker's observation of two separate "stop bar" violations of R.C. 4511.43. *State v. Harpel*, 3d Dist. Hardin No. 6-20-03, 2020-Ohio-4513, ¶ 18 (stating that observation of a violation of R.C. 4511.43 justifies a traffic stop). Reasonable suspicion is present to justify a traffic stop when a defendant's tires are stopped on a stop bar or "stop line," thus we find no error with the trial court's determination that reasonable suspicion existed here. *Findlay v. Frenzel*, 3d Dist.

Hancock Nos. 5-20-01, 5-20-02, 2020-Ohio-4621, ¶ 11; *see also State v. Miller*, 3d Dist. Marion No. 9-14-50, 2015-Ohio-2529.

{¶14} Carpenter now contends that while there may have been some evidence of alcohol consumption, Patrolman Baker did not have evidence that would lead to a reasonable suspicion that Carpenter was *impaired* prior to asking Carpenter to perform field sobriety tests. More specifically, Carpenter argues that the odor of alcohol is evidence of *consumption* rather than *impairment*. Further, he argues that bloodshot/glassy eyes is not necessarily evidence of impairment. Carpenter also contends that Patrolman Baker had already determined that he was going to have Carpenter perform field sobriety tests when he asked Carpenter to get out of the vehicle, which was prior to Carpenter's admission that he had consumed any alcoholic beverages, thus Patrolman Baker had even less information to base his reasonable suspicion on.

{¶15} In reviewing his arguments, we emphasize that Carpenter seeks to have us view each factor in complete isolation, but our review concerns the totality of the circumstances. *See State v. Null*, 3d Dist. Logan No. 8-19-50, 2020-Ohio-3222, ¶ 19. Here, Patrolman Baker stopped a vehicle that had committed two traffic violations at approximately 3:09 a.m. After speaking with Carpenter and the driver, Patrolman Baker noted a "strong" odor of an alcoholic beverage from within the vehicle. He also noted that Carpenter's eyes were bloodshot and glassy.

**{¶16}** In order to determine whether the odor of an alcoholic beverage was emanating from the passenger, as Carpenter claimed, Patrolman Baker removed Carpenter from the vehicle. Once he did, he noticed that the odor of an alcoholic beverage was emitting specifically from Carpenter's breath. Patrolman Baker then asked Carpenter if he had consumed alcoholic beverages that evening, and Carpenter admitted that he had, albeit several hours prior. It was only at this point that Patrolman Baker requested that Carpenter perform field sobriety tests.[3]

**{¶17}** The record thus reflects that each step in the investigative process led to the next until the totality of the circumstances prompted Patrolman Baker to request that Carpenter perform field sobriety tests. *See Null*, *supra*; *see also State v. Lewis*, 3d Dist. Auglaize No. 2-16-13, 2017-Ohio-996 (determining that under the totality of the circumstances, conducting field sobriety tests was reasonable). While Carpenter argues that there were numerous indicators of impairment that were *not* present here, such as erratic driving, slurred speech, and loss of motor control, we emphasize that not every OVI investigation is going to have the same indicators of impairment, which is why the totality of the circumstances must be considered. Here, the totality of the circumstances supported the trial court's determination to

---

[3] Carpenter contends that since Patrolman Baker radioed dispatch and said that he was getting Carpenter out of the vehicle to perform field sobriety tests before Carpenter was out of the car, we effectively cannot consider the information learned after Carpenter was removed from the car when evaluating the totality of the circumstances. However, Patrolman Baker clarified that when he was having Carpenter step out of the vehicle, he had to notify dispatch. Patrolman Baker testified that at the time he got Carpenter out of the vehicle, he may or may not have had Carpenter perform field sobriety tests.

overrule Carpenter's suppression motion. *Compare State v. Angers*, 3d Dist. Auglaize No. 2-21-04, 2021-Ohio-3640 (wherein we determined the totality of the circumstances did *not* support conducting field sobriety tests because, *inter alia*, officers merely opined that they were not smelling the odor of alcohol on a driver because of the strong smell of tobacco in the car, and other noted factors the officers noted were not specifically indicative of impairment).

{¶18} In sum, the totality of the circumstances observed by Patrolman Baker supported his determination to expand the scope of the stop into an OVI investigation and to request that Carpenter perform field sobriety tests. Based on the specific facts and circumstances of this case, we do not find that the trial court erred by overruling Carpenter's suppression motion. Therefore, Carpenter's assignment of error is overruled.

*Conclusion*

{¶19} Having found no error prejudicial to Carpenter in the particulars assigned, his assignment of error is overruled and the judgment of the Auglaize County Municipal Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**